**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| PATTY JONES, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00156- |
| v. | § | SDJ-CAN |
| | § | |
| LAMAR COUNTY, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Lamar County, Texas, Scott Cass, Anson Amis, Tyler Bussell, Patty Easterwood, Courtney Womack, and Medical Jailer Shannon's Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. 45]. After reviewing the Motion to Dismiss, Plaintiff's Responses [Dkts. 49; 52], Defendants' Reply [Dkt. 53], Defendants' Supplements [Dkts. 62; 67], Plaintiff's Response to Defendants' Supplements [Dkt. 77], and Defendants' Reply [Dkt. 79], and all other relevant filings, the Court recommends Defendants' Motion to Dismiss be **GRANTED IN PART**, Plaintiff's claims against Lamar County, Sheriff Cass, and Womack be **DISMISSED WITH PREJUDICE**, and Plaintiff's claims against Bussell, Easterwood, Medical Jailer Shannon, and Franklin be **DISMISSED WITHOUT PREJUDICE**, leaving only certain of Plaintiff's claim against Defendant Amis for further consideration.

**BACKGROUND**

***Relevant Procedural History***

On February 24, 2021, Plaintiff Patty Jones ("Plaintiff"), proceeding *pro se*, filed her original complaint [Dkt. 1]. On April 29, 2021, the Court issued a Notice of Impending Dismissal, advising Plaintiff that sixty days had passed, and she must serve Defendants in accordance with

Federal Rule of Civil Procedure 4(m) before the expiration of ninety days [Dkt. 3]. On May 27, 2021, Plaintiff requested an extension of time to serve Defendants [Dkt. 5], which the Court granted, giving Plaintiff until July 1, 2021, to complete service [Dkt. 6]. On July 1, 2021, the Clerk of Court issued and provided summons to Plaintiff for each of Defendants Sheriff Scott Cass, Deputy T. Bussell, Deputy P. Easterwood, Deputy Courtney Womack, Hayley Record, Broderick Franklin, and Deputy Anson Amis [Dkts. 8; 9; 10; 11; 12; 13; 14]. On August 4, 2021, Plaintiff filed purported returns of service for each Defendant except Franklin [Dkts. 15; 16; 17; 18; 19; 20]. Plaintiff filed a notice stating: "Broderick Franklin is the only Defendant who has not responded to the summons. . . . Soon as I get his, I will send it" [Dkt. 21]. On August 19, 2021, Plaintiff filed a purported return for Franklin [Dkts. 27; 28; 29].

On August 10, 2021, Amis, Bussell, Cass, Easterwood, Lamar County, Record, and Womack moved to dismiss Plaintiff's claims, in large part, based on service defects [Dkt. 22]. On September 10, 2021, Plaintiff, still proceeding *pro se*, filed a First Amended Complaint omitting Hayley Record, thus terminating her as a party, and adding Medical Jailer Shannon as a Defendant [Dkt. 30]. Amis, Bussell, Cass, Easterwood, Lamar County, Record, and Womack moved to both strike and to dismiss the First Amended Complaint [Dkts. 33; 34]. In response, Plaintiff requested an extension of time to respond and to retain counsel [Dkt. 35]. On October 22, 2022, Plaintiff retained counsel [Dkt. 37]. Plaintiff continues to be represented by counsel in this cause. Plaintiff's counsel moved for additional time to respond to the then-pending motion to dismiss, and the Court set Plaintiff's motion for a hearing [Dkts. 39; 40]. At the November 12, 2021 Hearing, Plaintiff orally moved for leave to file an amended complaint in lieu of an extension of time to respond to the then-pending motion to dismiss; Defendants were unopposed. The Court

granted the oral motion, mooting the earlier-filed motion to dismiss [Dkt. 44] and ordered Plaintiff to file any amended complaint no later than November 29, 2021 [Dkt. 41].

***Plaintiff's Live Pleading – Summary of Claims/Requested Relief in Second Amended Complaint***

On November 29, 2021, Plaintiff, through counsel, timely filed her Second Amended Complaint – the live pleading – asserting claims against Lamar County, Sheriff Scott Cass, Anson Amis, Tyler Bussell, Patty Easterwood, Courtney Womack, Medical Jailer Shannon, and Broderick Franklin [Dkt. 43]. The individual Defendants are sued in their individual capacities only, and Lamar County is sued on a theory of municipal liability [Dkt. 43 at 2-3]. Beyond naming Defendant Franklin as a Defendant, he is not mentioned in the live pleading [*See* Dkt. 43 at 3]. Notably, while repeatedly referenced in the complaint, Deputy Doe is not named as a Defendant.

Plaintiff's Second Amended Complaint asserts claim(s) against Defendants arising out of her contact with law enforcement, arrest, and subsequent detention in Lamar County in February 2019 [Dkt. 43 at 1-11]. Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of her Fourth and Fourteenth Amendment rights; a state-law claim for false imprisonment in the alternative to her constitutional claim for false arrest; a claim for violation of the Americans with Disabilities Act ("ADA"), as well as a claim for medical indifference/denial of medical care [Dkt. 43 at 11-18]. For her claims, Plaintiff seeks various relief, including the following:

- All damages allowed by law for each cause of action, including for physical pain and mental anguish; disfigurement; physical impairment; medical care expenses; loss of enjoyment of life, inconvenience, out-of-pocket economic losses; other expenses related to arrest and/or prosecution of Ms. Jones; and exemplary/punitive damages;
- Injunctive relief "against Defendants barring the custody of nude individuals when it is reasonable to allow robing, the use of guns in non-threatening situations"; and
- Reasonable and necessary attorneys' fees pursuant to 42 U.S.C. § 1988, costs of court; and pre-judgment and post-judgment interest; any other relief to which she may be entitled.

[Dkt. 43 at 19]

***Plaintiff's Live Pleading –Summary of Factual Allegations***

Plaintiff pleads that on February 25, 2019, law enforcement contacted Plaintiff at her residence alleging she was "terrorizing a family through emails and text messages" [Dkt. 43 at 4]. On February 26, 2019, law enforcement again accused Plaintiff of telephone harassment, and thereafter, Plaintiff contends law enforcement began to harass and disturb her [Dkt. 43 at 4].  On or about February 27, 2019, law enforcement entered Plaintiff's home at a time that Plaintiff was not fully clothed; she alleges she was handcuffed, and her nude body was placed on display and touched by law enforcement [Dkt. 43 at 5-6].  Law enforcement entered Plaintiff's home a second time on February 27, 2019, while she was again unclothed, and arrested her, transporting her to the Sheriff's Office via unknown dark roads [Dkt. 43 at 8-9].  Upon arrival at the Lamar County Jail, Plaintiff felt ill and was denied medical care, notwithstanding making requests for such care and having chronic medical conditions [Dkt. 43 at 9-10].

Stemming from this chain of events, Plaintiff brings § 1983 claims for excessive force under the Fourth Amendment against Defendant Amis [Dkt. 43 at 11].  Defendants Bussell, Easterwood, and Womack allegedly violated Plaintiff's Fourth Amendment right by failing to intervene in response to the excessive force used by Amis and Deputy Doe, which was "objectively unreasonable in light of clearly established law at the time of the relevant incident" and "each had a realistic opportunity to prevent further injury" [Dkt. 43 at 11-13].

Plaintiff also pleads a "due process claim" arising out of her false arrest in violation of the Fourteenth Amendment [Dkt. 43 at 14].[1]  She alleges the arrest lacked probable cause because she

---

[1] To the extent Plaintiff purports to plead a due process violation under both the Fourth and Fourteenth Amendments [Dkt. 43 at 14-15], there is no separate § 1983 claim for due process violations where the underlying allegation is the same that gives rise to a Fourth Amendment violation because the more specific constitutional provision controls.  *See Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *16 (N.D. Tex. May 25, 2017) (citing *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994)) ("when a party invokes the Fourteenth Amendment because it incorporates other substantive constitutional

had not committed a crime "nor had she been suspected of committing a crime when Cass, Bussel, Easterwood, Womack, Deputy Doe, and Captain Anson [Amis] arrested her" [Dkt. 43 at 14].[2] Plaintiff pleads that all individual Defendants, "Bussell, Easterwood, Womack, []and Captain Anson[,] illegally arrested" her [Dkt. 43 at 15].   She pleads these "officers had a documented history of using excessive force, false warrants, and unlawfully arresting individuals in Lamar County without lawful reasons" [Dkt. 43 at 15-16].   In the alternative to her constitutional claim for false arrest, Plaintiff pleads a state-law false imprisonment claim against Amis, Womack, Bussell, and Easterwood, globally alleging they willfully detained Plaintiff, directly restrained her physical liberty without adequate legal justification, and that each officer "knew there was no warrant to enter her home without consent" [Dkt. 43 at 16].

In addition, she pleads she was deprived of medical care for her serious medical needs "once she was taken into custody" [Dkt. 43 at 15]; while Womack, Bussell, and Easterwood are referenced in the paragraph asserting such claim, Plaintiff's claim for inadequate medical attention

---

proscriptions, the courts properly consider the alleged constitutional violations under the more specific right implicated by the allegations."), *report and recommendation adopted*, No. 1:16-CV-181-C, 2017 WL 3034317 (N.D. Tex. July 17, 2017); *Earnheart v. City of Terrell*, No. CIV.3:04CV755-H, 2005 WL 81724, at *8 (N.D. Tex. Jan. 13, 2005) ("Violations of constitutional rights which are addressed by a specific amendment must analyzed under that amendment, rather than under the Due Process Clause.").   Plaintiff's claims for violations of the Fourteenth Amendment are therefore considered properly under the Court's analysis of her Fourth Amendment claims.   *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a "substantive due process" approach."); *Reitz*, 2017 WL 3046881, at *16 (quoting *Bailey v. United States*, 568 U.S. 186, 192-93 (2013)) ("Unlawful detention and arrest claims arise under the Fourth Amendment, which is 'applicable through the Fourteenth Amendment to the States.'").

[2] Plaintiff specifically states that Defendant Amis harassed her, disturbing her and her family by repeatedly calling her on the phone "in an effort to annoy alarm and torment Ms. Jones, in violation of Texas penal code § 42.07" [Dkt. 43 at 5].   Defendants urge, to the extent he seeks to do so, that Plaintiff cannot state a claim for any alleged violation of Texas Penal Code § 42.07 [Dkt. 62 at 19].   Although it does not appear Plaintiff attempts to assert such claim, the Court agrees, "to the extent that Plaintiff asserts civil liability based on criminal statutes, those claims fail, because [s]he 'has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute.'" *Roe v. Johnson Cnty*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *21 (N.D. Tex. July 29, 2019) (quoting *Savannah v. United States*, No. 3:07-cv-2052-O, 2009 WL 1181066, at *2 (N.D. Tex. Apr. 30, 2009)), *report and recommendation adopted*, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019)

focuses only on the alleged inactions by Amis and Medical Jailer Shannon [Dkt. 43 at 9-10]. She alleges Amis and Shannon "intentionally dismissed her pleas" for medical care [Dkt. 43 at 10].

Against Lamar County and Sherriff Cass, Plaintiff brings § 1983 claims for failure to train, supervise, and discipline based on municipal liability [Dkt. 43 at 12-14]. Plaintiff pleads that Sheriff Cass failed to train, supervise, and discipline his officers, which was the moving force behind Plaintiff's injuries [Dkt. 43 at 12]. Sheriff Cass failed to "properly train or supervise his deputies" regarding the following issues: "how to conduct a proper investigation, refrain from unreasonable and excessive use of force, establish probable cause, execute a warrant, search, and seizure, intervening or respond to a person in custody that had a serious medical need, elevated blood pressure and heart rate with deliberate indifference" [Dkt. 43 at 11]. As to the specific deficiencies, Plaintiff alleges the training and supervision related to excessive force was deficient as to "identifying resistance, the different types of resistance, and the proper response when met with resistance of a suspect, handling a nude suspect, along with when to employ appropriate responses," as well when to intervene when officers observe use of excessive force [Dkt. 43 at 15-16]. Plaintiff alleges this inadequate training and supervision resulted in violations of Plaintiff's constitutional right "to medical care for serious medical needs," to be free from false arrest based on a falsified warrant, and to be free from violations of bodily integrity, such as here, where officers groped the breast area of a female in custody [Dkt. 43 at 11]. Lamar County and Sheriff Cass's failures allegedly constitute deliberate indifference [Dkt. 43 at 14].

As to Sheriff Cass specifically, Plaintiff alleges he "is directly liable" because he "had full knowledge of his subordinates' [ ] unconstitutional past behaviors but failed to take steps to discipline or stop the conduct" [Dkt. 43 at 15]. As to her medical indifference and ADA claim,

Sheriff Cass's liability arises from his "day-to-day administration of the jail," including medical care [Dkt. 43 at 12, 14].

The allegations particular to Lamar County for the § 1983 claims are sparse. Plaintiff pleads only that Lamar County failed to discipline its officers, and

> [a]s a matter of this custom, policy, practice, Lamar County encourages the type of misconduct at issue by failing to adequately investigate, reprimand, train, supervise, control, and discipline instances of misconduct, leading the deputies to believe that their misconduct will never be meaningfully investigated and that they can mistreat the public without fear of any consequences.

[Dkt. 43 at 15]. No specific custom, policy, or practice is identified.

As to Lamar County only, Plaintiff alleges a violation of the ADA for denial of reasonable accommodations after she made "the medical department at the jail aware that she had a chronic condition" [Dkt. 43 at 17-18]. Plaintiff generally recites the elements of an ADA claim, alleging "Jones has a qualifying disability, a chronic condition, heart failure, she was denied the benefits of services, programs, or activities for which the public entity is responsible, treatment, her medications, and access to medical care" [Dkt. 43 at 18]. In support of this claim, Plaintiff pleads she "advised she was not feeling well, had a heart condition and high blood pressure" but was "left in a holding cell without care or her medications for her heart or blood pressure" [Dkt. 43 at 18].

In sum, following exhaustive review of Plaintiff's Second Amended Complaint, Plaintiff asserts an excessive force/failure to intervene claim against Amis, Womack, Bussell and Easterwood; a false arrest claim against Amis, Womack, Bussell, Easterwood, and Cass; a state-law false imprisonment claim in the alternative against Amis, Womack, Bussell, and Easterwood; a medical indifference claim against Amis and Shannon; a failure-to-train, failure-to-supervise,

and failure-to-discipline claim against Cass and Lamar County; and an ADA claim against Lamar County. No specific claims are asserted against Franklin.[3]

***Motion to Dismiss – Summary of Relevant Filings and Grounds Asserted for Dismissal***

On December 13, 2021, Defendants Amis, Bussell, Cass, Easterwood, Lamar County, Shannon, and Womack filed their Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. 45]. Defendant Franklin did not respond to the live pleading, nor has he otherwise appeared in this matter. On December 29, 2021, Plaintiff filed a response to the Motion [Dkt. 49], and on January 3, 2022, with leave of Court, filed a supplement to her response [Dkt. 52].[4] On January 5, 2022, Defendants filed a reply [Dkt. 53]. The Court set the Motion to Dismiss for Hearing [Dkt. 48]. At Hearing, on January 6, 2022, the Parties presented argument regarding the Motion to Dismiss, specifically as to defects in service and limitations [*See docket generally*]. At the conclusion of Hearing, the Court (1) directed the Parties to file supplemental briefing on service and limitations, (2) granted Plaintiff an additional 30 days to correct any service deficiencies, and (3) directed the Parties to meet and confer regarding the service issues.

On Sunday, February 6, 2022, Defendants filed their First Supplemental Brief in Support of their Motion to Dismiss [Dkt. 62]. On February 15, 2022, Defendants filed their Second Supplemental Brief in Support of their Motion to Dismiss [Dkt. 67]. On March 15, 2022, Plaintiff filed her Response to Defendants' Second Supplement [Dkt. 77]. On March 22, 2022, Defendants filed a Reply to Plaintiff's Response to their Second Supplement [Dkt. 79]. At this juncture, the Court has considered all briefing filed in connection with the Motion to Dismiss.

---

[3] Plaintiff also vaguely references other "claims" such as "illegal search and seizure" and "violation of the right to bodily integrity." Use of such "magic words" standing alone is not sufficient to state a claim, and the Court does not further consider, nor does it substantively discuss, these glancing references. To the extent intended as claims, they should be dismissed for failure to plead in compliance with the Federal Rules.
[4] On December 30, 2021, Plaintiff filed an unopposed Motion for Leave to supplement her initial response, requesting leave to file a supplement on or before January 3, 2022 [Dkt. 50 at 1-2], which the Court granted [Dkt. 52].

Defendants' Motion to Dismiss urges dismissal under Rule 12(b)(5) for failure to properly serve and under Rule 12(b)(6) for limitations, failure to state a claim, and immunity from suit. More specifically, Defendants argue for dismissal on Rule 12(b)(5) grounds for insufficient service of process as to Defendants Medical Jailer Shannon, Amis, Bussell, and Easterwood [Dkts. 45 at 2-5; 62 at 5-9; 67 at 2-6; 77].[5]  The following Rule 12(b)(6) grounds are raised:

    (1) limitations bar Plaintiff's ADA and constitutional claims [Dkts. 45 at 5-8; 62 at 9-19; 67 at 7-15];

    (2) failure to state any claim, including specifically a § 1983 claim against Lamar County and Sheriff Cass based on municipal theories of liability; failure to state a claim for violations of the ADA, false imprisonment under state law, violations of the Texas Penal Code § 42.07 [Dkts. 45 at 9-12; 62 at 2-5, 19], and for deliberate indifference under § 1983 related to medical care Plaintiff received while detained in the Lamar County Jail [Dkt. 45 at 18-20]; and

    (3) Qualified immunity shields Defendants Amis, Bussell, Easterwood, Womack, and Medical Jailer Shannon from Plaintiff's suit [Dkts. 45 at 13-20].

The Court first addresses the alleged service defects and Rule 12(b)(5) grounds, as it is undisputed that "[b]efore a[] federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  Though neither Party urges the Court should consider the asserted Rule 12(b)(6) grounds in any particular order, the Court addresses limitations first, as time-barred claims must be dismissed with prejudice, and if dismissed, the Court need not reach Defendants' alternative bases for relief.  *See Morrill v. City of Denton*, No. 4:14CV749, 2016 WL 11472647, at *5 (E.D. Tex. July 15, 2016) ("Because the Court finds that Plaintiff's claims are

---

[5] Defendants' Motion urges dismissal of other defendants on Rule 12(b)(5) grounds; the Court has already determined that Lamar County, Sheriff Cass, and Womack were served within the time extended by the Court under Rule 4 and thus the Court addresses only the service arguments as to Shannon, Amis, Bussell and Easterwood [Dkt. 80].  Plaintiff has filed returns of service for the live pleading for Lamar County [Dkt. 78, Sealed], Anson Amis [Dkt. 70, Sealed], Broderick Franklin [Dkt. 71, Sealed], Scott Cass [Dkt. 73], and Courtney Womack [Dkt. 73-1].  Defendants Lamar County, Sheriff Scott Cass, and Deputy Courtney Womack were each served with process by February 14, 2022, the extended deadline the Court granted upon request for leave [Dkts. 73; 78].

barred by the statute of limitations and should be dismissed, the Court need not address Defendants' other dismissal arguments, including any qualified or other immunity defenses."), *report and recommendation adopted*, No. 4:14CV749, 2016 WL 4472776 (E.D. Tex. Aug. 25, 2016), *aff'd*, 693 F. App'x 304 (5th Cir. 2017).

## SERVICE OF PROCESS – RULE 12(b)(5)

### *Rule 12(b)(5) Legal Standard*

A Rule 12(b)(5) motion allows a party to file a motion to dismiss for "insufficient service of process." FED. R. CIV. P. 12(b)(5). Under Rule 12(b)(5), a district court has "broad discretion to dismiss an action for ineffective service of process." *Styles v. McDonalds Rest.*, No. 4:17-CV-791-ALM CAN, 2019 WL 2266636, at *2 (E.D. Tex. Jan. 28, 2019) (quoting *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994)), *report and recommendation adopted*, No. 4:17-CV-791, 2019 WL 1219117 (E.D. Tex. Mar. 15, 2019). "A motion under Rule 12(b)(5) is the proper way to challenge 'the mode of delivery or the lack of delivery of the summons and complaint.'" *PCM Sales, Inc. v. Quadbridge, Inc.*, No. 3:14-CV-2806-L, 2016 WL 407300, at *2 (N.D. Tex. Feb. 3, 2016) (quoting 5B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (footnote omitted)). "'When service of process is challenged, the serving party bears the burden of proving its validity or good cause' for failing properly to effect service." *Shabazz v. City of Houston*, 515 F. App'x 263, 264 (5th Cir. 2013) (quoting *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam)).

For service to be effective, a plaintiff must comply with the mandates of Federal Rule of Civil Procedure 4. "Unless service is waived, proof of service must be made to the court." FED. R. CIV. P. 4(l)(1). Further, "Federal Rule 4(m) permits dismissal of a suit if the plaintiff fails to serve a defendant within 90 days of filing but provides that 'if the plaintiff shows good cause for

the failure, the court shall extend the time for service for an appropriate period.'" *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 WL 3035916, at *5 (E.D. Tex. June 19, 2018) (quoting FED. R. CIV. P. 4(m); citing *Gartin v. Par Pharm. Cos.*, 289 F. App'x 688, 692 (5th Cir. 2008)).  "[G]ood cause under Rule 4(m) requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Id.* (quoting *Gartin*, 289 F. App'x at 692).  Importantly, *pro se* litigants are not absolved from compliance with the requirements of Rule 4.  *Flander v. Kforce, Inc.*, 526 F. App'x 364, 368 (5th Cir. 2013) (per curiam); *see also Lyons v. Starbucks Coffee Co.*, No. 3:19-CV-2457-S-BT, 2020 WL 5732638, at *5 (N.D. Tex. Aug. 24, 2020) (recommending dismissal of the plaintiff's claims against a defendant after noting the "plaintiff's *pro se* status does not excuse the failure to properly effect service"), *report and recommendation adopted*, No. 3:19-CV-2457-S-BT, 2020 WL 5710245 (N.D. Tex. Sept. 24, 2020).  Unserved defendants should be dismissed.

### Insufficient or Ineffective Service of Process

Defendants Medical Jailer Shannon [Dkt. 60], Anson Amis [Dkt. 70], Patty Easterwood [Dkt. 58], and Tyler Bussell [Dkt. 59] each urge that they have not been properly served and should be dismissed under Rule 12(b)(5) for ineffective/insufficient service of process, as the Court is without personal jurisdiction over improperly served defendants.  *See Williams v. Lambright*, No. 4:19-CV-00342-ALM-CAN, 2020 WL 949205, at *1 (E.D. Tex. Jan. 22, 2020) (collecting cases) ("A federal court is without personal jurisdiction over a defendant unless the defendant is served under Rule 4. . . . Thus, it is respectfully recommended that Plaintiff's claims against the unserved defendants be dismissed."), *report and recommendation adopted*, No. 4:19-CV-342, 2020 WL 924213 (E.D. Tex. Feb. 26, 2020).

***Medical Jailer Shannon***

Plaintiff added Medical Jailer Shannon as a defendant for the first time in the First Amended Complaint, filed on September 10, 2021 [Dkt. 30].  Plaintiff concedes Medical Jailer Shannon has not been served with process but argues Defendants "have yet to provide the correct name of Jailer Shannon" [*See* Dkt. 77 at 3-4].  Defendants rejoin Plaintiff provides no evidence that the Lamar County Sheriff's Office has concealed the identity of any person who works at the Jail [Dkt. 45 at 8].  Further to this point, Defendants explain:

> The Defendants to which Plaintiff's requested extension applies are Lamar County Sheriff Cass, Deputy Womack, Deputy Bussell, Patty Esterwood [sic] and Medical Jailer Shannon. These Defendants, with the exception of Easterwood, all work at the Sheriff's Office or Jail. The Sheriff's Office and Jail, were open and conducting normal business on February 2-7, 2022. A simple telephone call to the Sheriff's Office at any time during the almost one year pendency of this case would have resulted in the service of these Defendants.

[Dkt. 68 at 5] (footnote omitted).

At the January 2, 2022 Hearing on the instant Motion, the Court expressly directed Plaintiff to confer with Defendants to cure the identified defects in service and granted a 30-day extension of time for service to be effectuated, including as to Shannon.  It is rare to dismiss "a cause due to the failure to properly serve a defendant"; normally, the Court only resorts to dismissal "after multiple chances were given."  *Styles*, No. 4:17-cv-791 (E.D. Tex. July 24, 2019), ECF No. 56; *see also Bowling v. Childress-Herres*, No. 4:18-CV-610-ALM-CAN, 2019 WL 4463450, at *6 (E.D. Tex. Aug. 7, 2019) (providing the plaintiff multiple opportunities to serve the defendant), *report and recommendation adopted*, No. 4:18-CV-610, 2019 WL 4451122 (E.D. Tex. Sept. 17, 2019).  Multiple chances have been given in this case.  Since the date of Hearing, Plaintiff has not shown she has taken any action or made any efforts to ascertain the real name and address of Medical Jailer Shannon, notwithstanding being provided such an opportunity by the Court.  *See*

*Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 345 (5th Cir. 2007) (per curiam) (citing *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987)) ("Because of Holly's 'inaction' in the face of Metro's challenge to the sufficiency of service, the district court did not abuse its discretion in granting the motion."). In her supplemental briefing, Plaintiff does not argue that good cause exists to extend the deadline for service any further, nor does she specifically move for discovery related to Medical Jailer Shannon [*See* Dkt. 77 at 6-7].[6] Dismissal of Shannon is warranted where, as here, Plaintiff has failed to serve this defendant even after counsel was retained.

### Anson Amis

Defendants urge that Defendant Anson Amis was served with a defective summons that does not comply with Rule 4(a) [Dkt, 67 at 4-5]. Defendants admit Amis was personally served at his home on the last day of Plaintiff's first 30-day deadline to cure service of process. They argue, however, that "Defendant Amis was not served with the current Summons, which was issued on February 2, 2022" and was instead served with the initial July 1, 2021 defective summons [Dkts. 17; 56; 67 at 4-5]. More specifically, Defendants object that "[t]he Summons served on Defendant Amis did not 'state the name and address of the plaintiff's attorney,' as required by Rule 4(a)" [Dkt. 67 at 4-5]. Rule 4(a) requires a summons to contain certain information, including that it states the name of the attorney representing the plaintiff. FED. R.

---

[6] All Parties agree that if any Defendant is dismissed for failure to serve, Plaintiff's claims against them would be subject to dismissal due to limitations if refiled. Notably, and as discussed more fully *infra*, the Court finds herein that Plaintiff's claim for medical indifference – the only claims asserted against Shannon – are already time barred. Further on this point, Plaintiff vaguely urges across her pleadings that she should be permitted limited discovery related to limitations and accrual; however, any such discovery request at this juncture should be denied. *See Parker v. Missouri City*, No. CIV.A. H-12-2484, 2014 WL 7004061, at *21 (S.D. Tex. Dec. 10, 2014) (citation omitted) ("even if, at this extremely late date, the Court permitted Parker to have discovery regarding the identity of the two unknown officers and their whereabouts so that he could amend his complaint to name them and effect proper service on them, a second amended complaint against them would not relate back for limitations . . . . his lack of diligence makes equitable tolling of the statute of limitations inappropriate.").

Civ. P. 4(a)(1).[7]  Whether under Rule 12(b)(4) or Rule 12(b)(5),[8] defects may warrant dismissal for insufficient process.  *Grant-Brooks v. Nationscredit Home Equity Servs. Corp.*, No. CIV.A. 3:01-CV2327R, 2002 WL 424566, at *2 (N.D. Tex. Mar. 15, 2002) (first citing Fed. R. Civ. P. 12(b)(4) and 12(b)(5); then citing *Murphy Brothers, Inc.*, 526 U.S. at 350 ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.")) ("Rules 12(b)(4) and 12(b)(5), respectively, provide defenses for insufficiency of process and insufficiency of service of process. However, in addition to constituting grounds for dismissal in and of themselves, insufficient process and insufficient service of process also implicate a court's authority to exercise personal jurisdiction over a defendant.").  However, "[d]efects in the summonses 'are not fatal if they do not prejudice the defendant.'"  *Pharmerica, Inc. v. DSJ Healthcare, Inc.*, No. 4:99-CV-242, 2010 WL 4962974, at *3 (E.D. Tex. Oct. 22, 2010) (first quoting *Warfield v. Byron*, 137 F. App'x 651, 655 (5th Cir. 2005); then citing *Lechner v. Citimortgage, Inc.*, No. 4:09–CV–302, 2009 WL 2356142 *1 (N.D. Tex. July 29, 2009)) ("[A]bsent a showing of prejudice to the defendant or evidence of flagrant disregard for the rules of procedure, 'a minor technical error' does not justify dismissal."), *report and recommendation adopted*, No. 4:99-CV-242, 2010 WL 4955724 (E.D. Tex. Dec. 1, 2010). Amis has suffered no prejudice from the defect identified – lack of the name of counsel for Plaintiff.  The Court declines to recommend dismissal on this basis as to Defendant Amis.  *See,*

---

[7] Rule 4(a) states that a summons must contain: (A) name the court and the parties; (B) be directed to the defendant; (C) state the name and address of the plaintiff's attorney or--if unrepresented--of the plaintiff; (D) state the time within which the defendant must appear and defend; (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint; (F) be signed by the clerk; and (G) bear the courts seal.  Fed. R. Civ. P. 4(a)(1).

[8] "Generally speaking, "[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," while a "Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint."  *Gartin*, 289 F. App'x at 692 n.3 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353); *see also Just. v. Austin Police Dep't*, No. A-20-CV-1063-RP, 2021 WL 1930302, at *5 (W.D. Tex. May 13, 2021) (quoting the same).

*e.g.*, *id.* at *3 ("Defendants' arguments that the summonses 'did not name the court in which the action was pending' and 'listed the wrong cause number' are unavailing.").

### *Tyler Bussell and Patty Easterwood*

Returns of service for Bussell and Easterwood were filed as to the original complaint. The return of service "checks" that personal service was made upon Bussell and Easterwood; however, a certified mail, return receipt is provided [Dkts. 18; 20]. From a review of all relevant filings, it appears the Parties agree an attempt to effectuate service as to both Bussell and Easterwood was made via certified mail in July 2021. Defendants urge the returns on file are defective because they were made by an interested party – Plaintiff's mother – and were not signed by the Defendants [Dkts. 62 at 8; 67 at 6]. Notably, upon the filing of the live pleading, summons were reissued as to both Bussell and Easterwood. No return of service as to the reissued summons was received for Bussell or Easterwood [Dkts. 58; 59].

"Service under the Federal Rules may be accomplished on an individual in the United States by delivering the process personally, leaving the service at the individual's home with 'someone of suitable age and discretion who resides there [,]' delivering a copy to a registered agent, or by any method permitted under state law." *A&P Support, Inc. v. Crucible Ventures Ltd.*, No. 1:15-CV-094-BL, 2017 WL 7048258, at *2 (N.D. Tex. Nov. 17, 2017) (quoting FED. R. CIV. P. 4(e)), *report and recommendation adopted*, No. 1:15-CV-094-C-BL, 2018 WL 557888 (N.D. Tex. Jan. 23, 2018). "Texas []permits service by 'mailing to the defendant by registered or certified mail, return receipt requested,' and other methods with leave of court." *Id.* (quoting TEX. R. CIV. P. 106(a)-(b)). Relevant here, "[t]he return receipt must be signed by the addressee to be effective." *Id.* (citing TEX. R. CIV. P. 107(c); *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (per curiam)). And service by certified mail must be made by a person authorized under

Texas Rule 103.  To reiterate, Defendants urge that Plaintiff's attempt at service of the original complaint on Defendants Bussell and Easterwood is ineffective for two reasons: (1) Plaintiff's mother is not authorized to complete service under Rule 103 as she constitutes an interested person, and (2) no return receipt signed by Defendants is on file.

### *Authorized, Uninterested Party*

Under Texas Rule 103, persons authorized to serve process are limited to: "(1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court."  TEX. R. CIV. P. 103.  Important here, "no person who is a party to or interested in the outcome of a suit may serve any process in that suit."  *Id.*  Rule 103 also provides: "Service by registered or certified mail and citation by publication must, if requested, be made by the clerk of the court in which the case is pending."  *Id.*  Some courts have concluded that this language allows only the clerk of court and no other persons to serve by certified mail.  *See Osorio v. Emily Morgan Ent., LLC*, No. CIV.A.SA04CA0179-XR, 2005 WL 589620, at *2 (W.D. Tex. Mar. 14, 2005); *see also Kleppinger v. Assocs. Corp. of N. Am.*, No. CIV.A.3:99-CV-1662-L, 2003 WL 22329032, at *2-3 (N.D. Tex. Oct. 6, 2003).  Other courts have determined that the rule is broader.  *See P & H Transp. v. Robinson*, 930 S.W.2d 857, 859 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("We hold service by mail may be made not only by the clerk but also by other authorized persons.").  The returns of service filed with the Court do not state that Plaintiff's mother is a private process server or that she is authorized by law or court to serve the Defendants.  Because Plaintiff has failed to present any evidence showing that Plaintiff's mother is a "person authorized by Rule 103" to serve process upon the Defendants, the Court concludes that Plaintiff has failed to satisfy her burden to show these Defendants were served by a proper person using a

proper method, and therefore, service on these Defendants was not properly effected. *See Sys. Signs Supplies*, 903 F.2d at 1013; *Winegarner v. Cinemark Holdings, Inc.*, No. 4:09CV627, 2010 WL 2901871, at *3 (E.D. Tex. June 30, 2010) ("Service by certified mail is only valid if it complies with Texas law."), *report and recommendation adopted*, No. 4:09CV627, 2010 WL 2901867 (E.D. Tex. July 21, 2010); *Rothschild Connected Devices Innovations, LLC v. ADS Sec., L.P.*, No. 2:15-CV-01431-JRG-RSP, 2019 WL 4451254, at *1 (E.D. Tex. Sept. 16, 2019) (granting motion to dismiss where the recipient did not sign the return receipt as required by Rule 107 and where attempted service by mail was made by a person not authorized under Rule 103).

### *Returns Not Signed by Defendants*

Even if the Court were incorrect and Plaintiff's mother is authorized to serve process via certified mail, Texas law still requires that the return receipt be signed by Defendants as the addressees. Defendants contend they did not sign the return receipt. Plaintiff has no presented evidence to the contrary. Rather, Plaintiff urges that the Texas signature requirement cannot be enforced because the USPS modified its signature policy during the COVID-19 pandemic, claiming that "USPS protocol does not allow the collection of signatures on a return receipt" [Dkt. 77 at 7].[9] Plaintiff has not shown this policy was in place in July 2021, and even if it was, the USPS policy makes clear that the initials of the person receiving the certified mail would be recorded, even if a full signature would not be obtained. Plaintiff has not alleged that Defendants' initials appear on the certified mail return receipt, nor has Plaintiff has provided any authority that the signature requirement was waived for the purpose of Texas Rule 107 for service of process at the time of service in July 2021 [*See* Dkts. 18; 20]. Finally, Plaintiff urges that Defendants "fail

---

[9] The Court agrees with Defendants' reading of the alleged change to the USPS's signature process; however, Plaintiff has not shown that Texas changed the requirement for signature on returns of service for effective service of process, notwithstanding any change to USPS's signature requirements.

to provide credible evidence to support its allegation that the certified mail was received by the front desk clerk at the Sheriff's Office" [Dkt. 77 at 7].[10]   The Court has been provided the tracker for the certified mail receipts [Dkt. 62-1].   The Court may consider documents attached to a Rule 12(b)(5) motion related to factual question raised by the Parties.   *See Patterson v. Meredith Corp.*, No. 6:18-CV-467-37GJK, 2018 WL 3860164, at \*1 (M.D. Fla. June 29, 2018) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)).   The delivery information from the USPS website for Defendants Bussell and Easterwood indicates the "item was delivered to the front desk, reception area, or mail room" [Dkts. 62-1 at 5-8].   *See Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 921 (5th Cir. 2021) ("On their face, neither of these provisions encompass service upon a city secretary or a defendant's attorney. Hence, state law is no more availing to Calhoun than Rule 4(e)(2)(C). In sum, the district court correctly dismissed Calhoun's claims against Tsai, Nguyen, and Rowe for insufficient service of process."); *Ayika*, 378 F. App'x at 434 (citations omitted) (first quoting Tex. R. Civ. P. 107; then quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988)) ("The return receipt must bear the 'addressee's signature.' In this case, service was addressed to the defendants personally, but their signatures do not appear on the return receipts. Thus, Ayika's attempted service was insufficient under Rule 4. We further note that, although the defendants apparently had actual notice of the insufficient service, the 'defendant's actual notice of the litigation ... is insufficient to satisfy Rule 4's requirements.'"); *Winegarner* 2010 WL 2901871, at \*3 ("Plaintiff did not comply with either federal or state rules in effecting service of process. The record reflects that none of the Defendants were personally served. Instead, Plaintiff attempted service by priority mail. As for the Lewisville Defendants,

---

[10] See also *Sandoval v. Am. Laser Skin Care, LLC*, No. 5:14-CV-338-DAE, 2015 WL 518801, at \*7 (W.D. Tex. Feb. 2, 2015) ("Plaintiff has not demonstrated that the two summons forms plaintiff tendered to the District Clerk were sufficient to secure effective service of process on defendant.").

Plaintiff failed to comply by delivering the 'summons' to non-parties who were not authorized to accept service of process and by failing to effect service under a method permitted by the Rules. Simply mailing the summons and complaint to the City for individual defendants does not complete service.").  Failure to cure known defects in service after additional time to correct mistakes warrants dismissal; thus, Plaintiff's claims against Defendants Tyler Bussell and Patty Easterwood are subject to dismissal under Rule 12(b)(5) and they should be dismissed without prejudice.  *See Ayika*, 378 F. App'x at 433-34 (finding no abuse of discretion where the district court dismissed without prejudice for failure to perfect service under the federal rules or Texas).

To summarize, the Court recommends granting Defendants' Rule 12(b)(5) Motion as to Defendants Medical Jailer Shannon, Easterwood, and Bussell, and denying the Motion as to Defendant Amis.  Defendant Amis was served within the time extended by the Court, and Defendants have not shown that the defect to the summons identified prejudiced Amis such that it warrants dismissal.  The Defendants that remain after considering the service issues raised under Rule 12(b)(5) are Amis, Womack, Sheriff Cass, Lamar County, and Franklin.

## LIMITATIONS – RULE 12(B)(6)

### *Summary of Limitations Arguments*

Defendants' limitations arguments are two-fold; Defendants first advance that Plaintiff's claims are time barred because the live pleading, the Second Amended Complaint, was filed after the expiration of the applicable limitations period for Plaintiff's § 1983 claims (excessive force, false arrest, failure to intervene, and medical indifference), state law false imprisonment claim, and any claim for violation of the ADA, and secondly, that relation back, whether under federal or state relation back rules, cannot save Plaintiff's claims.  Plaintiff urges her claims were timely

filed, and further, that numerous tolling doctrines preclude dismissal, including concealment, the discovery rule, and COVID tolling by emergency order(s) of the Supreme Court of Texas.

***Limitations – 12(b)(6) Legal Standard***

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)).  Stated differently, dismissal is proper if the complaint affirmatively shows the plaintiff's claims are time barred and there is no basis for tolling. *Scott v. Liberty Cnty.*, No. 1:10-CV-609-TH, 2012 WL 6000405, at *8 (E.D. Tex. Nov. 30, 2012) (quoting *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011)) ("a complaint may be subject to dismissal if its allegations affirmatively demonstrate that the plaintiff's claims are barred by the statute of limitations and fail to raise some basis for tolling.").  A claim is time-barred and subject to dismissal under Rule 12(b)(6) where the claim was clearly filed after the applicable statute of limitations had run and it was evident from the pleadings that the plaintiff was not entitled to the benefit of the discovery rule. *Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366-70 (5th Cir. 1994).

***ADA and Section 1983 Medical Indifference Claims Are Time Barred***

Defendants urge dismissal of Plaintiff's claims for violations of the ADA and § 1983 claims for medical indifference as barred by limitations because they were not timely brought within two years and do not relate back to the original complaint under Rule 15.  Claims under the ADA and for medical indifference under § 1983 both have a two-year statute of limitations. *Est. of King v. Polk Cnty.*, No. 9:17-CV-31, 2020 WL 1510292, at *3 (E.D. Tex. Mar. 30, 2020) (citing *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 470 (5th Cir. 2019); *Frame*, 657 F.3d at 237).  While state

law determines the limitations period, federal law determines accrual, which here is the date that Plaintiff was released from the Lamar County Jail. *See Lee v. Dallas Cnty.*, No. 3:19-CV-2690-L-BN, 2022 WL 721536, at *3 (N.D. Tex. Feb. 18, 2022) (citations omitted) ("The parties agree that [plaintiff's] last day in custody at the Dallas County jail was December 27, 2017. So that is the latest date on which his ADA and RA claims against Dallas County and Parkland (the jail's medical provider) could have accrued."), *report and recommendation adopted*, No. 3:19-CV-2690-L-BN, 2022 WL 717261 (N.D. Tex. Mar. 10, 2022).

Here, Defendants argue that Plaintiff's ADA and medical indifference claims accrued, at the latest, on February 28, 2019, the date she was released from the Lamar County Jail [Dkt. 62 at 18]. Plaintiff does not contest this date of accrual. Plaintiff therefore had until February 28, 2021 to bring any ADA or medical indifference claims. Plaintiff's original complaint did not assert an ADA claim or allege a claim for lack for medical indifference, nor in any way reference Plaintiff's medical needs or medical care while a pretrial detainee in the Lamar County Jail [*See* Dkt. 1]. Because these claims are not pleaded in the original complaint filed within two years, the claims are time barred unless there is a basis for tolling or relation back to save these claims. Notably, while Plaintiff briefs the merits of her ADA claim in response to the Motion to Dismiss, no argument can be found regarding whether her ADA or medical indifference claims arise out of the original complaint for the purpose of limitations and Rule 15(c) [*See* Dkt. 52 at 15-17].

The relation-back doctrine under Federal Rule 15(c) allows for amendments to a pleading to relate back to the date of the original pleading, which can save a claim from being time-barred.[11]

---

[11] Rule 15(c) provides three situations for an amended complaint to relate back. However, only 15(c)(1)(B) applies in this situation. Worthy of mention, the first path under Rule 15(c)(1)(A) states a pleading relates back where "the law that provides the applicable statute of limitations allows relation back," but the Fifth Circuit "has held that Texas law providing the applicable limitations period for personal injury claims does not allow relation back within the meaning of Rule 15(c)(1)(A)." *Liggins v. City of Duncanville*, No. 3:20-CV-0654-S, 2021 WL 929105, at *4 (N.D. Tex. Mar. 11, 2021) (citing *Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017)).

*Wilson v. City of Mission*, No. 7:18-CV-00399, 2020 WL 2079359, at *3 (S.D. Tex. Apr. 29, 2020) ("The relation-back doctrine permits an amended complaint to substitute in place of the original complaint, and thus cure any potential statute of limitations issues, when the doctrine as embodied in Federal Rule of Civil Procedure 15(c) and elaborated upon by the courts is satisfied.").  An amended complaint relates back to the date of the original complaint under Rule 15(c)(1)(B) when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B).  The focus of the relation-back doctrine is on the underlying facts upon which the cause of action is based." *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005).  "When a party merely states a new legal theory or further expounds upon facts previously alleged, the proffered amended complaint relates back to the previously filed complaint's filing date." *Gray v. Upchurch*, No. CIV A 505-CV-210-KSJ-MR, 2006 WL 3694604, at *4 (S.D. Miss. Dec. 13, 2006).

Defendants argue the time-barred ADA and medical indifference § 1983 claims cannot relate back to the original complaint.[12]  More specifically, Defendants urge:

> Because Plaintiff's claims related to the Jail did not arise from any conduct, transaction or occurrence set out in her Original Complaint, and the claims related to the Jail are not "tied to a common core of operative facts" as the claims in the Original Complaint, Plaintiff's claims related to the Jail cannot relate back to her Original Complaint.

[Dkt. 62 at 14 & n.8] (footnote omitted).  Upon review, the Court agrees.  Plaintiff's ADA claim does not arise out of conduct or an occurrence that relates back to the original complaint, nor does the original pleading contain allegations that relate to claims for medical indifference, denial of

---

[12] As summarized in Defendants' briefing, they assert the following specific claims do not relate back, including any claim for: "Failure to ensure inmates received medical and mental care in the Jail – against Defendants Lamar County and Sheriff Cass (¶ 68)"; "Failure to ensure the Jail's policies were being enforced by supervising employees and followed by other employees – against Defendants Lamar County and Sheriff Cass (¶ 69)"; "Deprivation of Medical Care once taken into custody – against Defendants Anson Amis and Medical Jailer Shannon (¶¶ 84, 94)"; and "Denial of benefits of services, programs, or activities in the Jail in violation of the Americans with Disabilities Act – against Defendant Lamar County (¶¶ 97-98)" [Dkt. 62 at 3-4, 14 n.8].

medical care by Amis or Shannon, and/or failure by Lamar County or Sheriff Cass to ensure proper medical care for detainees [Dkt. 43 at 12, 14-15].  While the original complaint does refer to the fact of her detention, no mention is made of any medical care sought while at the Lamar County Jail in the original complaint, thus Rule 15 is not satisfied.  *See Henry v. City of Taylor*, No. A-10-CA-693 LY, 2011 WL 13235053, at *3 (W.D. Tex. May 23, 2011) ("Claims that arise at a separate time, out of separate facts, even if the same parties are involved, do not satisfy [the Rule 15] standard."), *report and recommendation approved*, No. A-10-CA-693-LY, 2011 WL 13238338 (W.D. Tex. July 29, 2011).  Because there is no mention of conduct or an occurrence in violation of the ADA or for inadequate medical care under § 1983 in the original complaint, Plaintiff's new claims in the live pleading do not relate back to a timely-filed claim and are barred.  *See id.* at *3 ("[plaintiff's] assertion that his claim of medical neglect arises out of the same conduct, transaction or occurrence as his claim of excessive force used during an arrest is suspect. Although [plaintiff] contends the injury for which he sought treatment was suffered during his arrest, the failure to receive medical treatment for it is a wholly separate set of actions which allegedly occurred over the course of multiple days of incarceration in the Williamson County Jail by a separate set of actors. Plaintiff has not cited any case law supporting such a broad interpretation of the language of Rule 15, nor is the undersigned aware of any."); *Coker v. Dallas Cnty. Jail*, No. 3:05-CV-0005-M, 2008 WL 763166, at *1 (N.D. Tex. Mar. 19, 2008) (finding the plaintiff's ADA claim "does not relate back under FED. R. CIV. P. 15(c) because that claim was not stated in his original Complaint," where the ADA claim was "wholly different" from the other § 1983 claims alleged). Any claims under the ADA or for medical indifference in the live pleading are time barred.

*Remaining Section 1983 Claims Are Not Time Barred*

The forum state's general statute of limitations for personal injuries provides the applicable limitations period for § 1983 cases. *Matter of Hoffman*, 955 F.3d 440, 443 (5th Cir. 2020) (citing *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018)). Here, under Texas law, the applicable limitations period is two years for § 1983 violations. *Id.* at 444 (citing *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015); TEX. CIV. PRAC. & REM. CODE § 16.003)); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). "A federal court applying a state statute of limitations must give effect to the state's tolling provisions, as well." *Est. of I.C.D. v. Beaumont Indep. Sch. Dist.*, No. 1:18-CV-137, 2020 WL 1028073, at *6 (E.D. Tex. Mar. 2, 2020). While state law controls the limitations period, federal law determines the issue of accrual. *Matter of Hoffman*, 955 F.3d at 444. Under federal law, a § 1983 claim accrues when the plaintiff becomes aware of the injury. *See Roe v. Johnson Cnty.*, No. 3:18-CV-2497-B-BN, 2020 WL 6576784, at *7 (N.D. Tex. July 31, 2020), *report and recommendation adopted in part*, No. 3:18-CV-2497-B-BN, 2020 WL 5542333 (N.D. Tex. Sept. 15, 2020).

Plaintiff's § 1983 claims against the individual Defendants for excessive force, false arrest, failure to intervene have a two-year statute of limitations. *See Humphreys v. City of Ganado*, 467 F. App'x 252, 255 (5th Cir. 2012) ("claims for excessive force, assault and battery, unreasonable search and seizure, and false arrest are all governed by a two-year statute of limitations."). These claims accrue two years from the date of the arrest that gives rise to the underlying violations. *Morrill v. City of Denton*, No. 4:14CV749, 2016 WL 11472647, at *5 (E.D. Tex. July 15, 2016) (citing *Humphreys*, 467 F. App'x at 255) ("the Court finds that Plaintiff became aware of any denial of due process, unwarranted or excessive force, or failure to intervene (to the extent such allegation could state a violation of Section 1983) at the time of his arrest in August 2012."), *report*

*and recommendation adopted*, No. 4:14CV749, 2016 WL 4472776 (E.D. Tex. Aug. 25, 2016), *aff'd*, 693 F. App'x 304 (5th Cir. 2017). Plaintiff alleges these claims accrued on or around February 25, 2019, and any limitations would have expired on February 25, 2021, absent tolling [Dkt. 52 at 6]. The live pleading describes conduct that occurred on or around February 27 and February 28, 2019 [Dkt. 43 at 5-10]. Plaintiff filed her original complaint on February 24, 2021, thus, Plaintiff's § 1983 claims against the Individual Defendants were pleaded within two years, save and except for medical indifference, discussed *supra,* which the Court finds is barred by limitations).

Plaintiff's failure-to-train and failure-to-supervise claims brought against Lamar County and Sheriff Cass also have a two-year limitations period. The same statute of limitations that applies to § 1983 claims brought against individuals also applies to *Monell* claims." *Bell v. Stanek*, No. 14 C 6627, 2016 WL 3364786, at \*2 (N.D. Ill. June 17, 2016), *aff'd sub nom. Bell v. City of Chicago*, 694 F. App'x 408 (7th Cir. 2017). Neither party addresses the date of accrual for such claims against Lamar County and Sheriff Cass or argues it should be treated differently than the accrual of claim against the individual defendants. *See Humphreys*, 467 F. App'x at 256 n.3 (citing *Piotrowski*, 237 F.3d at 567-77) ("in support of his municipal liability claims, Humphreys fails to present any argument explaining why the accrual of the statute of limitations on his municipal liability claims should be treated differently than the accrual of his claims against the individual officers."). Plaintiff's § 1983 claims against the remaining Defendants therefore were timely filed within the two-year limitations period.

Defendants nonetheless contend Plaintiff's § 1983 claims are barred by limitations under the Texas state rule that requires due diligence in *serving* process in addition to timely *filing* the claim within the limitations period [Dkt. 62 at 10-17]. More specifically, Defendants urge

Plaintiff's claims are barred by the Texas's rule for relation back because "the mere filing of suit will not toll the statute of limitations" and she did not diligently serve all Defendants [Dkt. 62 at 10-11]. To be clear, Defendants urge the § 1983 claims are barred by Texas's state relation back rule, not the federal relation back rule found in Rule 15(c). "Under Texas law, in order to 'bring suit' within the two-year statute of limitations period, the plaintiff must use due diligence in serving the defendant with process when service occurs after the expiration of the limitations period." *Paredes v. City of Odessa*, 128 F. Supp. 2d 1009, 1018 (W.D. Tex. 2000) (citing *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam)). "However, the Texas rule requiring due diligence in service . . . [generally] does not apply to Section 1983 claims filed in federal court." *Vela v. City of Austin Tex.*, No. 1-15-CV-1015 RP, 2016 WL 1583676, at *3 (W.D. Tex. Apr. 19, 2016) (citing *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 n.1 (5th Cir. 1998) (concluding Texas due diligence rule for service of process does not apply to Section 1983 actions in Texas federal court)); *Scott v. Cypress Creek Emergency Med. Servs.*, No. CIV.A.H-06-1436, 2007 WL 2209268, at *1 (S.D. Tex. July 27, 2007) ("the Texas due diligence rule does not apply to claims asserted pursuant to 42 U.S.C. § 1983 filed in federal court"); *Onyebuchi v. Volt Mgmt. Corp.*, No. 4:04-CV-576-A, 2005 WL 1981393, at *2 (N.D. Tex. Mar. 31, 2005) (citing *Gonzales*, 157 F.3d at 1021 n.1) ("Although this rule arguably applies to state law claims brought in federal courts, the Fifth Circuit has indicated that it would not apply to claims based on federal law."). The Texas diligence requirement applies to federal claims in limited circumstances, not present here, where the court's jurisdiction is based on diversity or where an untimely claim originally filed in state court is removed to federal court. *See, e.g.*, *Koshar v. TIGI Linea Corp.*, No. 4:21-CV-280-SDJ-KPJ, 2022 WL 848052, at *3 (E.D. Tex. Feb. 4, 2022) (considering diligence in the limitations analysis where two untimely federal employment claims first filed in state court were later removed to federal

court), *report and recommendation adopted*, No. 4:21-CV-280-SDJ-KPJ, 2022 WL 839945 (E.D. Tex. Mar. 21, 2022); *Aforigho v. Tape Prod. Co.*, No. 4:19-CV-01778, 2020 WL 4369501, at *3 (S.D. Tex. July 15, 2020) (collecting cases) ("These cases clarify that *Walker* applies when a federal court considers state law claims asserted based on diversity jurisdiction."), *report and recommendation adopted*, No. 4:19-CV-01778, 2020 WL 4368065 (S.D. Tex. July 30, 2020).[13] Upon consideration, the Texas diligence rule does not apply to Plaintiff's § 1983 claims. *See Scott*, 2007 WL 2209268, at *6 (denying 12(b)(6) motion alleging the Texas diligence rule bars § 1983 claims because "the federal claims were timely filed in compliance with the Federal Rules").

### State Law False Imprisonment Claim Is Not Barred

Under Texas law, a claim for false imprisonment has a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *see Bohannan v. Griffin*, No. 4:11-CV-299-A, 2016 WL 3647625, at *6 (N.D. Tex. June 30, 2016) ("The state law torts of false arrest and/or false imprisonment are governed by the two-year statute of limitations prescribed by section 16.003 of the Texas Civil Practice & Remedies Code."). Under federal law, which determines accrual, false imprisonment claims based on an allegedly unlawful arrest and detention accrue when the plaintiff is arrested. *Shugart v. Hoover*, No. 4:17-CV-00633-ALM-CAN, 2018 WL 4600308, at *12 (E.D. Tex. Jan. 26, 2018) (citing *Lopez v. Unknown Galveston Police Officer No. 1*, No. CIV.A. G-06-0371, 2007 WL 1108736, at *6 (S.D. Tex. Apr. 11, 2007)), *report and recommendation adopted*, No. 4:17-CV-633, 2018 WL 2454676 (E.D. Tex. June 1, 2018). Defendants urge Plaintiff's claim for false imprisonment is barred by limitations despite conceding "Plaintiff alleged false

---

[13] Though these limited exceptions may apply to § 1983 claims originally filed in state court that are later removed to federal court, this case does not fall within the exception because Plaintiff original filed in federal court. *See O'Carolan v. Puryear*, 70 F. App'x 751, 752 (5th Cir. 2003) (citing FED. R. CIV. P. 81(c)). ("because O'Carolan's case originated in state court, and the events relevant to its timeliness *occurred prior to its removal*, the Federal Rules of Civil Procedure do not govern the issue whether O'Carolan tolled the applicable statute of limitations while her case was pending in Texas state court.") (emphasis added).

imprisonment in her Original Complaint; therefore, her false imprisonment claim was filed within the applicable statute of limitations period" [Dkt. 62 at 17]. Defendants' argument is that while timely pleaded, Defendants did not receive notice of the claim within the two-year statute of limitations running, and "as a matter of law, Plaintiff did not exercise diligence in procuring issuance and service of citation" [Dkt. 62 at 16-17].

### Notice

Defendants admit the false imprisonment claim was pleaded in the original complaint and was thus timely filed within the two-year limitations period. Notice is a required element for Rule 15(c) relation back where the amended complaint seeks to add a new party.[14] *See* FED. R. CIV. P. 15(c)(1)(C)(i). The false imprisonment claim in the live pleading remains against Amis and Womack, neither of whom are "new" parties in the amended complaint. Thus, there is no relation back issue for the Court to address as to this claim. And further, the remaining Defendants did receive notice within the time extended by the Court for service under Rule 4(m). *See Lee v. Dallas Cnty.*, No. 3:19-CV-2690-L-BN, 2022 WL 721536, at *5 (N.D. Tex. Feb. 18, 2022) ("Here, the FAC was served on Dallas County Judge Clay Jenkins on May 5, 2020 – within the Rule 4(m) deadline extended by the Court. The County therefore obtained actual awareness of the issues in this lawsuit within the time required by Rule 15."), *report and recommendation adopted*, No. 3:19-CV-2690-L-BN, 2022 WL 717261 (N.D. Tex. Mar. 10, 2022). Defendants simply have not explained why they would be prejudiced

---

[14] Rule 15(c)(1)(C), which addresses when an amended complaint relates back and seeks to add a party, requires that the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits." FED. R. CIV. P. 15(c)(1)(C)(i). Because the Court finds the only "new" party, Medical Jailer Shannon, should be dismissed for failure to serve within the Rule 4(m) time to serve, the Court need not assess whether any claims against her relate back to the original complaint. Lamar County, Sheriff Cass, Deputy Womack, and Deputy Amis are each named parties in the original complaint, thus they are not "new" parties who need notice for the purpose of Rule 15.

### *Diligence in Procuring Issuance and Service of Citation*

Defendants' second argument urges the state-law diligence requirement, discussed *supra*, does not toll the running of limitations to allow relation back where Plaintiff "did not exercise diligence in procuring issuance and service of citation" of the complaint, and thus the state-law false imprisonment claim is time barred [Dkt. 62 at 17]. Under the state relation back rule, "when a plaintiff files within the limitations period, but fails to serve the defendant until after the period expired, the date of service can relate back to the date of filing *only* if the plaintiff exercised diligence procuring service to defendant." *Ponder v. City of Denton*, No. 4:13CV17, 2014 WL 5364026, at *2 (E.D. Tex. Oct. 21, 2014) (citing *Gant*, 786 S.W.2d at 260), *report and recommendation adopted*, No. 4:13CV17, 2015 WL 1393249 (E.D. Tex. Mar. 25, 2015); *see Contreras v. Chavez*, 420 F. App'x 379, 381 (5th Cir. 2011) (quoting *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 890 (Tex. 1975)) (quoting the same). "The matter of a plaintiff's due diligence is generally a question of fact determined by a two-pronged test: '(1) whether the plaintiff acted as an ordinary prudent person would have acted under the same circumstances; and (2) whether the plaintiff acted diligently up until the time the defendant was served.'" *Ponder*, 2014 WL 5364026, at *2 (quoting *Hodge v. Smith*, 856 S.W.2d 212, 215 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Defendants are correct that, different than the conclusion reached about Plaintiff's § 1983 claims, federal courts typically consider the Texas diligence rule for state law false imprisonment claims. However, here, the Court extended the time for completion of service as permitted by Rule 4, and in granting such extension, considered whether there was "good cause" to grant Plaintiff an extension of time for service under federal Rule 4 [Dkt. 80 at 7-9]. While the federal "good cause" and the state "due diligence" inquiries are not the same, they are substantially

similar, and the Court found good cause for a final extension of time to effectuate service.[15]

Defendants do not explain why the Court should now find these claims barred for lack of diligence

in service when it previously found good cause to extend time to serve under federal Rule 4. None

of the authority offered by Defendants suggests Plaintiff's efforts were so lacking as to require a

finding of no due diligence as matter of law. *See Razmzan v. Wal-Mart Stores, Inc.*, No.

4:16CV771-ALM-KPJ, 2017 WL 1654074, at *2 (E.D. Tex. Mar. 6, 2017) (citing *Barlow v. Wal-

Mart Stores, Inc.*, 215 F. App'x 317, 318 (5th Cir. 2006)) ("The existence of diligence is usually

a question of fact, but if no excuse is offered for a delay in procuring service of citation, or if the

lapse of time and the plaintiff's acts are such as conclusively negate diligence, a lack of diligence

will be found as a matter of law."), *report and recommendation adopted*, No. 4:16CV771, 2017

WL 1551614 (E.D. Tex. May 1, 2017); *Lee v. Mission Chevrolet, Ltd.*, No. EP-16-CV-00034-

DCG, 2017 WL 4784368, at *6 (W.D. Tex. Oct. 23, 2017).[16][17] Further buttressing this conclusion,

---

[15] As the Court explained previously,

> "Good cause is more than inadvertence, mistake of counsel, or ignorance of the rules. Plaintiff must show excusable neglect, as well as establish good faith and a reasonable basis for not serving the summons and complaint within the time allowed by the rules." *Winegarner v. Cinemark Holdings, Inc.*, No. 4:09CV627, 2010 WL 5489617, at *5 (E.D. Tex. Oct. 27, 2010), *report and recommendation adopted*, No. 4:09CV627, 2011 WL 13837 (E.D. Tex. Jan. 4, 2011). "This standard also normally requires some showing of 'good faith' on the plaintiff seeking an extension and some reasonable basis for failing to comply within the time limits." *Beck*, 2015 WL 1088846, at *3 (citing *Thrasher*, 709 F.3d at 511).

[Dkt. 80 at 7].

[16] Admittedly, Defendants filed the briefing on due diligence and the false imprisonment claim prior to the Court's written order discussing the "good cause" factors; however, they filed it *after* a hearing on the instant Motion where the Court by oral order extended Plaintiff's deadline to serve another 30 days. Nonetheless, Defendants did not address how the Court should consider lack of diligence after having already exercised its discretion to extend the time for service under Rule 4.

[17] As one court explained:

> Moreover, although it concedes that Rule 15(c)(1)(B) applies here, Mission in essence urges the Court to adopt a hybrid approach based on federal and state relation back rules. Sound policy reasons counsel against adopting such an approach. *See* 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1503 (3d ed. 2010) ("[T]here are strong federal interests encouraging the application of Rule 15(c), even at the expense of state relation-back law." (discussing various federal interests)). In particular, "application of state rules as to relation back would disrupt important federal policies favoring ... liberality of amendment." *Welch v. La. Power & Light Co.*, 466 F.2d 1344, 1346 (5th Cir. 1972) (per curiam); *see also Sanders–Burns v. City of Plano*, 594 F.3d 366, 375 (5th Cir. 2010) ("Rule 15(c) serves as a useful guide to help, not hinder,

the Supreme Court has explained of Federal Rule 15 that this Court has no discretion to consider Plaintiff's lack of diligence where the live pleading was served and relates back to the original complaint. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010) (citing FED. R. CIV. P. 15(c)(1)) ("The Rule plainly sets forth an exclusive list of requirements for relation back, and the *amending party's diligence is not among them*. Moreover, the Rule mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."). Plaintiff served the live pleading within the timeframe extended by the Court under Rule 4 as to those Defendants not dismissed under Rule 12(b)(5), for which it previously found good cause existed, thus the Court declines to find a lack of diligence under the state relation back rule.

### Plaintiff's Grounds for Tolling

Given that the Court does recommend dismissal of Plaintiff's ADA and medical indifference claims on limitations grounds, the Court considers Plaintiff's grounds for tolling. Plaintiff's live pleading asserts the following grounds for tolling of any statute of limitations:

> Due to the concealing of information by the defendant relented to names and facts, in addition to Covid-19 tolling provisions based on the emergency orders from this court and Texas Supreme Court Plaintiff alleges tolling applies in this lawsuit, as well as any provision that applies under TRCP TPRC Chapter16, including under *Medina*.[18]

---

persons who have a legal right to bring their problems before the courts." (internal quotation marks and citation omitted)).
*Lee*, 2017 WL 4784368, at *6 (footnotes omitted).
[18] The Court is unable to determine what tolling provision in Chapter 16 and what authority Plaintiff refers to as *Medina*. Plaintiff does not explain which Chapter 16 tolling provision applies to which claim(s) and/or Defendants [Dkt. 43 at 18]. One of the tolling provisions extends the limitations period for criminals involving sexual assault. In her reply to Defendants' Supplements, Plaintiff claims that Defendants Womack and Bussell are subject to a five-year statute of limitations, presumably referring to the limitation for sexual abuse crimes [Dkt. 77 at 3]. Regardless, Supreme Court and Fifth Circuit precedent make clear that all § 1983 claims borrowing a state statute of limitations should have the same limitations period as all other § 1983 claims, even if state limitations statutes provide for exceptions that extend the time to file for certain types of claims, including here, the 5-year limitation for claims involving sexual assault. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015) (citing *Owens v. Okure*, 488 U.S. 235, 238-40 (1989) ("the Court in *Owens* clearly intended for the 'general provision[s]' to govern all § 1983 claims regardless of whether any of the 'specific exceptions' could arguably apply under the particular facts

[Dkt. 43 at 18] (footnote omitted). The Court construes Plaintiff to allege fraudulent concealment, emergency tolling, as well as the discovery rule. Notably, the tolling effect of fraudulent concealment ends when a party learns of the relevant facts. *See King-White*, 803 F.3d at 764 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)) ("In Texas, defendants are estopped from relying on limitations if they are 'under a duty to make disclosure but fraudulently conceal[] the existence of a cause of action from the party to whom it belongs.'"); *Spearman v. Stephen*, 797 F. App'x 904, 905 (5th Cir. 2020) ("[plaintiff] had sufficient knowledge of the relevant facts by 2007 to end any estoppel effect that would otherwise apply."). Defendants contend they did not conceal any information and Plaintiff never made any request as to the identify of unknown parties [Dkt.45 at 8]. Plaintiff does not respond to this argument, or of specific note provide any evidence of her efforts to ascertain the identity of Medical Jailer Shannon, nor does she explain any other fact or event that was concealed by Defendants. She has not established tolling based on concealment. *See Spearman*, 797 F. App'x at 905 ("Nothing in Spearman's complaint, as amended, suggests that the defendants actively concealed the existence of any cause of action.").

The discovery rule defers accrual of the cause of action "until the injury was or could have reasonably been discovered." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011). However, the discovery rule applies only if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 36-37 (Tex. 1998)).[19] In a § 1983 case, the standard is the same – a

---

of the case. Thus, in urging us to analogize their federal claims to state claims involving sexual assault and apply a limitations period that is different from the 'general' period in Section 16.003, Plaintiffs are asking us to employ precisely the practice that the Supreme Court rejected in *Wilson* and *Owens*.").

[19] "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). "'Discovery' does not mean 'actual knowledge of the particulars of a cause of action,' but whether the plaintiff has 'knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights.'" *Winters v. Diamond Shamrock*

plaintiff's claim begins to accrue when she knew or should have known of her injury.  *See Shelby v. City of El Paso*, 577 F. App'x 327, 331-32 (5th Cir. 2014) ("The standard in § 1983 actions provides 'that the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action.'") (quoting *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989))).  It is unclear why Plaintiff asserts the discovery rule applies to any of her claims.  Where Plaintiff knows of the cause of her injury, for example, wrongful or excessive use of force, limitations begin to run when Plaintiff knows of the injury, not the liability of a particular defendant.  *See Roe*, 2020 WL 6576784, at *7 ("When a plaintiff in a civil rights actions knows or has reason to know of an injury and the cause of that injury – such as arrest by police officers that he believes to be wrongful or use of force by prison guards that he believes to be excessive – the limitations period begins, and he acquires a duty to fully investigate his claims. Simply because, for example, a plaintiff later learns – in pursuing his investigation, for example – that a particular defendant may be liable for his harm does not restart the limitations period.").

As to Plaintiff remaining basis for tolling, she provides no authority directing the Court to which Texas Supreme Court COVID-19 emergency order related tolling provisions she believes applies to this case.  Plaintiff may the Texas Supreme Court's Eighth Emergency Order, which states in relevant part:

> Any deadline for the filing or service of any civil case is tolled from March 13, 2020, until June 1, 2020, unless extended by the Chief Justice of the Supreme Court. This does not include deadlines for perfecting appeal or for other appellate proceedings, requests for relief from which should be directed to the court involved and should be generously granted.

---

*Chem. Co.*, 149 F.3d 387, 402-03 (5th Cir. 1998) (quoting *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140, 1141-42 (5th Cir. 1997)).  Indeed, "the accrual of the cause of action does not await the plaintiff's recognition that he has grounds for a lawsuit, or discovery that the defendant behaved tortiously, or recognition that the plaintiff might have a winning lawsuit.  *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1438-39 (N.D. Tex. Mar. 20, 1997) (internal citations omitted).

Supreme Court of Texas, *Eighth Emergency Ord. Regarding COVID-19 State of Disaster*, 597 S.W.3d 844 (Tex. Apr. 1, 2020). Plaintiff asserts that this order tolled the running of *all* limitations for a period of 79 days [Dkt. 52 at 3-4].[20] Even if the COVID-19 emergency order tolled the running of limitations for all of Plaintiff's claims that do not relate back (such as the ADA), adding the 79 days identified by Plaintiff to the two-year filing deadline would only extend the date to file to May 14, 2021. The live pleading was not filed by that date, thus applying the COVID emergency tolling provision does not save those claims for which limitations have run.

To the extent any COVID-related equitable tolling argument is advanced,[21] the party seeking equitable tolling bears the burden to show entitlement to such tolling. *Coltart v. Texas*, No. W-19-CA-464-ADA, 2020 WL 5416515, at *5 (W.D. Tex. Aug. 6, 2020) (citing *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002)). Plaintiff had notice from the Court of the Rule 4 extension granted in January 2022 and had hired a process server to attempt to serve the live pleading. There is simply no justification to equitably toll limitations any further as Plaintiff had notice of but failed to cure defects by serving the reissued summons with the amended complaint. *See Hestand v. Enge*, No. 6:20CV71, 2021 WL 5989137, at *9 (E.D. Tex. Sept. 21, 2021) ("Hestand's contention that COVID-19 forced litigants to operate by the seat of their pants to keep actions moving forward is belied by the fact that Hestand hired a process server a few weeks after

---

[20] At least one Court in this District conducted an *Erie* analysis and concluded that the Texas Supreme Court's emergency tolling order should apply in federal cases to toll the running of limitations. *See Allen v. Sherman Operating Co., LLC*, 520 F. Supp. 3d 854, 870 (E.D. Tex. 2021) (finding the Texas Supreme Court emergency COVID orders "apply in federal courts to the extent they affect statutes of limitations.").

[21] A court may equitably toll the applicable limitations period for claims under 42 U.S.C. § 1983. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "The doctrine of equitable tolling preserves a plaintiff's claims when the strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (internal quotations omitted). However, equitable tolling requires "a showing that '(1) [a litigant] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Mornes v. Valdez*, 414 F. Supp. 3d 888, 891-92 (N.D. Tex. Oct. 25, 2019) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (alteration in original). Courts apply equitable tolling sparingly; "a litigant may not use the doctrine 'to avoid the consequences of their own negligence.'" *Vega v. Town of Flower Mound*, 737 F. App'x 683, 685 (5th Cir. 2018); *see also Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) ("Equitable tolling is to be applied 'sparingly.'").

the undersigned's Rule 4(m) warning during the midst of COVID-19. Counsel's attempt to blame her client's imprisonment and the COVID-19 pandemic on her failure to serve properly—after a warning from the Court and Defendants' motion to dismiss that also placed her on notice that service was an issue—is unpersuasive."), *report and recommendation adopted sub nom. Hestand v. TDCJ-CID*, No. 6:20-CV-71-JDK-JDL, 2021 WL 5149796 (E.D. Tex. Nov. 5, 2021).

To summarize, Plaintiff's ADA and medical indifference claims are time-barred and should be dismissed with prejudice.[22] *See Bowling v. Willis*, No. 4:18-CV-610-ALM-CAN, 2019 WL 2517090, at *10 (E.D. Tex. Apr. 2, 2019) (recommending dismissal of § 1983 action as time-barred), *report and recommendation adopted sub nom. Bowling v. Dahlheimer*, No. 4:18-CV-610, 2019 WL 3712025 (E.D. Tex. Aug. 7, 2019). Remaining are Plaintiff's § 1983 claims for use of excessive force/failure to intervene against Amis and Womack [Dkt. 43 at 11-12], false arrest against Cass, Amis, and Womack [Dkt. 43 at 14-15], state law false imprisonment claims pleaded in the alternative against Amis and Womack [Dkt. 43 at 16], and failure-to-train, failure-to-supervise, and failure-to-discipline claims against Cass and Lamar County [Dkt. 43 at 12-14].

### REMAINING 12(B)(6) GROUNDS

Defendants urge dismissal of Plaintiff's remaining claims on the following grounds (1) failure to state a claim against Lamar County for failure-to-train, failure-to-supervise, and failure-to-discipline based on *Monell* liability, (2) failure to state a claim for supervisory liability against Sheriff Cass for failure-to-train, failure-to-supervise, and failure to discipline (3) failure to state any claim, including for excessive force, false arrest, failure to intervene or any state law

---

[22] Because the Court recommends dismissal of Plaintiff's claim under the ADA and § 1983 claims for medical indifference as time barred, it does not reach Defendants failure-to-state a claim grounds for these causes of action [*See* Dkt. 53 at 7-8].

claim of false imprisonment, and (4) because each of the remaining individual Defendants is entitled to qualified immunity for Plaintiff's constitutional claims.[23]

### *Rule 12(b)(6) Legal Standard*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6). The claims stated must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).[24] "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555. Further, in determining whether to grant a motion to dismiss under Rule 12(b)(6), a court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court may, however, consider "the complaint, any documents attached to the complaint, and any documents attached to the

---

[23] Defendants' Motion to Dismiss asserts that Plaintiff has failed to state any claim against any Defendant, as her live pleading is nothing more than conclusory accusations [Dkt. 45 at 10]. Defendants also argue that many of Plaintiff's claims do not identify any particular defendant who committed the alleged acts, and for other allegations, Plaintiff pleads that *all* Defendants committed the act, which is a form of collective pleading that offers no factual basis for considering such broad claims against the defendants grouped together [Dkt. 45 at 11]. To the extent Plaintiff does not identify a named defendant for any specific allegation, she has failed to state a claim. *See Bowling*, 2019 WL 2517090, at *9 (citation omitted) ("[a] complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct."); *Dodson v. Cnty. Comm'rs of Mayes Cnty.*, No. 18-CV-221-TCK-FHM, 2019 WL 2030122, at *5 (N.D. Okla. May 8, 2019) (dismissing the complaint "for failure to adequately allege a claim for supervisory liability" because the complaint lumped the defendants "together without identifying the specific actions each defendant took or failed to take during the incident giving rise to the action").

[24] To assess the sufficiency of a complaint, the Court first identifies conclusory allegations and disregards them, for they are "not entitled to the assumption of truth," and then considers whether the remaining allegations "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

***Failure to State a Claim for Failure to Train/Supervise***

   ***Lamar County***

   In *Monell*, the Supreme Court held that municipalities and other local government entities are included among those persons to whom § 1983 applies. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Notably, liability may be imposed "only where [the government entity] *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95) (emphasis in original). A plaintiff suing a municipality under § 1983 "must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).[25] Relevant to Plaintiff's claims, "[m]unicipalities may be liable under § 1983 if a 'policy' of inadequate training or supervision caused the violation of the plaintiff's constitutional rights." *Clyce v. Hunt Cnty.*, 515 F. App'x 319, 323 (5th Cir. 2013) (per curiam) (citing *Peterson*, 588 F.3d at 850). "A claim for failure to train must allege sufficient facts to show that (1) the municipality adopted inadequate training policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate training policy directly caused the plaintiff's injury." *Rivera v. Cameron Cnty.*, No. B:19-CV-141,

---

[25] To survive dismissal, Plaintiff must describe the County's policy or custom and its relationship to the underlying constitutional violation with specific facts. *Thomas v. State*, 294 F. Supp. 3d 576, 608 (N.D. Tex. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)), *report and recommendation adopted*, No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018). Plaintiff must also establish a "direct causal link" between the County's policy and the constitutional deprivation. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir. 2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)).

2022 WL 1103077, at *13 (S.D. Tex. Apr. 13, 2022) (quoting *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015)).  "'In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy' for purposes of Section 1983." *Darden v. City of Fort Worth*, 808 F. App'x 246, 249 (5th Cir. 2020) (per curiam) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "When such a claim is made, 'the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.'" *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  "However, 'a plaintiff must allege with specificity how a particular training program is defective.'" *Id.* at 250 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).  Here, Defendants argue Plaintiff's claim against Lamar County falls short because Plaintiff has "provided no []factual matter that, even accepted as true, would state a claim to relief that is plausible on its face" and that the Court should not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions" [Dkt. 45 at 11].  The Court agrees.  Plaintiff fails to adequately plead the required elements of a failure to train/supervise claim against Lamar County.

As to the first element for a municipal failure-to-train claim, describing the inadequacy of the local training procedures/programs, Plaintiff does not identify the relevant Lamar County training policies at all, let alone pleading with any specificity the type of training that it currently provides or that it fails to provide beyond conclusory allegations that it was inadequate as to Plaintiff's right to be "free from false arrest, excessive force, and her right to bodily integrity under the Fourth [Amendment, and] by failing to train [the] officers not to grope the breast area of females in custody" [Dkt. 43 at 11].  Numerous courts have found conclusory allegations, similar to those pleaded by Plaintiff, insufficient to survive a Rule 12(b)(6) motion. *See, e.g.*, *Speck*, 606

F. App'x at 736 (citing *Burge*, 336 F.3d at 369) ("Dismissal of Speck's conclusory failure to train claim was proper for at least two reasons. For one, the allegations do not satisfy the first element because he alleges no facts about what training Granbury provided or failed to provide. Complaints typically satisfy the first element by alleging facts related to the locality's actual training program."); *Rivera*, 2022 WL 1103077, at *13 ("As to the first element – the existence of inadequate training – the plaintiff must allege facts 'related to the locality's actual training program.'"). As to either underlying § 1983 claim, Plaintiff has failed to plead with specificity that any training policy of Lamar County is deficient by showing a pattern of violations for which the County had notice. Plaintiff's claims against Lamar County boil down to not having a policy in place that prevented the specific acts of the individual Defendants, but "a municipality is not required to have an affirmative policy that prevents constitutional violations." *See id.* at *19 ("Put another way, *Monell* and its progeny do not hold municipalities liable for failing to adopt best practices, but for failing to stop its worst ones.").

The Court specifically notes, in connection with Plaintiff's false arrest claim, although Plaintiff argues Lamar County failed to provide any specific training for how to execute an arrest warrant when the subject is found nude and/or in the presence of family at the time of arrest, this too is not enough to state a municipal liability claim. The Fifth Circuit "has stated that a rule of 'no special training = deficient training' must be rejected because it would ignore the training the officers did receive in basic recruit training." *Pineda v. City of Houston*, 291 F.3d 325, 334 (5th Cir. 2002) (cleaned up). And while Plaintiff alleges the individual Defendants have a reputation for falsification of warrants; she makes no reference to any officially adopted policies of Lamar County regarding search warrant affidavits. *See Aubrey v. D Mag. Partners, L.P.*, No. 3:19-CV-0056-B, 2020 WL 1469955, at *10-11 (N.D. Tex. Mar. 26, 2020) (quoting *Webster v. City of*

*Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)) ("The Court notes that these allegations, standing alone, fall far short of establishing a pattern that 'occurred for so long or so frequently' that the falsification of affidavits is 'the expected, accepted practice of [City of Dallas] employees.'").

The second element of Plaintiff's claim against Lamar County is also not met. Deliberate indifference is not sufficiently alleged. Plaintiff appears to plead a pattern of failure-to-train violations, claiming the individual Defendants "had a documented history of using excessive force, false warrants, and unlawfully arresting individuals in Lamar County" [Dkt. 43 at 15]. However, no specific incidents are provided to demonstrate this "documented history" or to show the conduct is of the same kind as here.[26] Plaintiff has not alleged beyond conclusory assertions that the County was aware of the alleged violations such that it would need a policy in place to address the conduct complained of. *See Rivera*, 2022 WL 1103077, at *20 ("the Plaintiffs have not pointed to any constitutional requirement that a municipality must have an official policy on the proper use of force. This is because such caselaw does not exist . . . . A municipality cannot be held liable for failing to stop constitutional violations if it is not aware of such violations."); *Aubrey*, 2020 WL 1469955, at *13 (citation omitted) (citing *Speck*, 606 F. App'x at 736) ("in the absence of allegations of City of Dallas's actual training procedures, this Court refuses 'to make the inference' that Plaintiffs' stand-alone experience with City of Dallas demonstrates inadequate training. Thus, Plaintiffs have not sufficiently alleged an official custom or policy based on City of Dallas's

---

[26] The live pleading contains two other allegations which may show a pattern, first alleging that "Sheriff Cass's property was the location where two dead bodies were found. That's being kept close to the vest," and "Ali Burress went missing and was later found dead after her body was discovered two years later," ostensibly related because Amis the supervisor on duty and Cass was the Sheriff at that time [Dkt. 43 at 17]. Plaintiff does not explain how such incidents support her claims against Lamar County; they do not involve conduct similar to the constitutional violations alleged here, rather wrongdoing in general. *See West*, 2022 WL 2033335, at *3 ("While a plaintiff may point to prior occurrences of constitutional violations to plead a *Monell* claim against a municipality, those prior occurrences must be not only similar to conduct at issue in the plaintiff's case but also persistent, as opposed to sporadic or isolated.").

alleged failure to train.").  Plaintiff has failed to state a claim against Lamar County for failure-to-train or failure-to-supervise.

### Sheriff Cass[27]

To the extent Plaintiff sues Sheriff Cass for acts of his deputies, including Amis and Womack, he cannot be held responsible for the acts of employees on any theory of vicarious liability or respondeat superior.  *See West v. Consol. Gov't of Lafayette*, No. CV 6:21-4431, 2022 WL 2033335, at *3 (W.D. La. May 13, 2022) ("In *Monell*, however, the Supreme Court held that the doctrine of respondeat superior does not apply to claims brought under Section 1983."), *report and recommendation adopted sub nom. West v. Consol. Gov't of Lafayet*te, No, 6:21-CV-04431, 2022 WL 2033341 (W.D. La. June 3, 2022); *Rosas v. Bexar Cnty.*, No. SA-14-CA-1082-DAE, 2015 WL 1966130, at *9 (W.D. Tex. Jan. 31, 2015) ("[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983."), *report and recommendation adopted*, No. 5:14-CV-1082-DAE, 2015 WL 1955406 (W.D. Tex. Apr. 29, 2015).

"To hold a defendant supervisor liable on a theory of failure-to-train-or-supervise, the plaintiff must show (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure-to-train-or-supervise and the violation of the plaintiff's rights; and (3) the failure-to-train-or-supervise amounts to deliberate indifference."  *Prescott v. Johnson*, No. 6:18-CV-577, 2022 WL 672694, at *12 (E.D. Tex. Mar. 7, 2022) (citing *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015)).  A supervisor may be held liable if he is not personally involved "only if the supervisory official implements a policy 'so deficient that the policy is itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'"

---

[27] Plaintiff's live pleading states that Cass, Womack, and Amis are only sued in their individual, not official, capacities.

*Carter v. Livingston*, No. 9:17-CV-40, 2021 WL 836865, at *8 (E.D. Tex. Jan. 20, 2021) (quoting *Thompkins v. Belt*, 828 F.2d 287, 304 (5th Cir. 1987)), *report and recommendation adopted*, No. 9:17-CV-40, 2021 WL 825490 (E.D. Tex. Mar. 3, 2021).[28]

Plaintiff generally pleads that Sheriff Cass knew of the need to train and supervise the individual Defendants.  But similar to the deficient allegations against Lamar County, Plaintiff does not plead a pattern of similar and pervasive conduct that rises to the level of deliberate indifference.  *See Jackson v. Valdez*, 852 F. App'x 129, 136-37 (5th Cir. 2021) (upholding dismissal of sheriff and county under Rule 12(b)(6)) ("And without such a pattern, the need for training could not have been 'plainly obvious' to Dallas County or its policymakers. Accordingly, the district court did not err in dismissing Jackson's municipal liability claim based on its purported failure to supervise or train."), *cert. denied*, 142 S. Ct. 863 (2022); *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009) (citing *Est. of Davis*, 406 F.3d at 382) ("As Goodman's § 1983 claim fails because she has not shown deliberate indifference, we need not discuss the remaining prongs of supervisor liability.").  Plaintiff also has not alleged a policy or custom implemented by Sheriff Cass related to excessive force or unlawful arrest/false warrants; her conclusory statements are not enough.  *See Roe*, 2020 WL 6576784, at *13 ("Plaintiff also includes many broad conclusory statements that lack specific facts to plausibly allege a policy or custom"); *Pinedo v. City of Dallas*, No. 3:14-CV-0958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("Pinedo's claim in count D that Officers Robinson and Meltabarger 'were acting within the custom, policy, practice and/or procedure of the City' when wrongfully arresting Junior is based on nothing more than

---

[28] To sufficiently plead a § 1983 claim, an individual defendant "must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)).  An individual is not liable for a civil rights violation unless it is shown that he personally committed an act or omission that deprived the victim of a right.  *Oliver v. Scott*, 276 F.3d 736, 747 n.6 (5th Cir. 2002); *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983").

conclusory allegations that there existed an official City policy or custom that led to the wrongful arrest."). In sum, Plaintiff's live pleading fails to plead a failure-to-train or failure-to-supervise claims beyond stating bare conclusions as to Cass. *See Roe v. Johnson Cnty.*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019) (quoting *Lowe v. Dallas Police Dep't*, No. 3:17-cv-704-G-BN, 2017 WL 4863076, at *9 (N.D. Tex. Oct. 17, 2017)) ("Asserting claims in this manner [of shotgun pleading] – that is, 'by merely attaching a label and/or legal conclusion to no facts unique to that claim or, at best, threadbare unique facts – is not sufficient to state a claim that is plausible on its face.'"), *report and recommendation adopted*, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019); *Pinedo*, 2015 WL 5021393, at *8 ("[Plaintiff] has failed to plead any facts from which the court can reasonably infer that the City's final policymakers were even aware of any systemic deficiencies in officer training, supervision, or discipline, much less that they deliberately chose a deficient course of action from the available alternatives."). Review of the Complaint reveals no act or omission personally committed by Sheriff Cass for any constitutional claim, be it use of excessive force, false arrest, or any other. *See Toliver v. Braddy*, No. 4:20-CV-00132-ALM-CAN, 2021 WL 1086176, at *5 (E.D. Tex. Feb. 11, 2021) ("Nothing in Plaintiff's complaint even vaguely suggests that the Sheriff participated in the alleged wrongful acts."), *report and recommendation adopted*, No. 4:20-CV-132, 2021 WL 1061386 (E.D. Tex. Mar. 19, 2021); *Diggs v. Waybourn*, No. 4:20-CV-706-P, 2021 WL 961676, at *3 (N.D. Tex. Mar. 15, 2021) (dismissing § 1983 claims against a sheriff and officers for "lack of sufficient personal involvement"). Absent personal involvement or facts that give rise to supervisory liability, Plaintiff fails to state a claim for relief. *See West*, 2022 WL 2033335, at *3 ("Here, the complaint pleads neither and accordingly, any claim against Lt. Morgan in a supervisory capacity should be dismissed for failure to state a claim."). Plaintiff's § 1983

claims against Sheriff Cass for failure to train or supervise are subject to dismissal.

***Failure to State a Claim for Failure-to-Discipline – Lamar County and Cass***

Failure-to-discipline claims are not common;[29] however, the elements are: "first, the municipality failed to discipline its employees; second, that failure to discipline amounted to deliberate indifference; and third, the failure to discipline directly caused the constitutional violations in question." *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 529 (S.D. Tex. 2021) (citing *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009); *Piotrowski*, 237 F.3d at 580)).[30] Where there is no actionable underlying constitutional violation or no showing of deliberate indifference by way of alleging a pattern of failure-to-discipline, any failure-to-discipline claim must fail. *See id.* (citing *Connick*, 563 U.S. at 62). Here, as with Plaintiff's failure-to-train or failure-to-supervise claims, Plaintiff only conclusory pleads that Sheriff Cass's alleged failure to discipline the individual Defendants rises to the level of deliberate difference, which is not enough. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 756 (5th Cir. 1993)) ("'Unintentionally negligent oversight' does not satisfy the deliberate indifference standard."). Nor is there any allegation of a pattern of failure to discipline by Lamar County or Sheriff Cass, which is a required element. *See Hunter*, 564 F. Supp. 3d at 530 (noting the plaintiff failed to identify any "other instances where officers weren't disciplined in response to clear constitutional violations"). In sum, Plaintiff fails to state any

---

[29] The Fifth Circuit "appear[s] to have addressed it only eight times in the last twenty years." *Hunter*, 564 F. Supp. 3d at 529.

[30] The Fifth Circuit explains that failure-to-discipline claims are similar to failure-to-train claims, such that a deliberate difference standard applies, and finding its cases addressing failure-to-train claims instructive:

> We have extended *City of Canton* to cover a plaintiff's allegations that the municipality failed to properly discipline its employees. *See Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir. 2001) ("Self-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens.").

*Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009).

failure-to-train, failure-to-supervise, and failure-to-discipline claim against Lamar County or Sheriff Cass, and such claims should be dismissed.[31]

### Claims Against Womack Should Be Dismissed

Upon review of the live pleading, the factual allegations against Womack are solely that she failed to intervene in the allegedly unconstitutional actions by Amis and other officers during the execution of the search warrant and the arrest warrant [Dkt. 43 at 11, 13-15]. Defendants urge Plaintiff's failure-to-intervene claim against Womack is in fact one for bystander liability [Dkt. 45 at 7]. "The Fifth Circuit has reiterated that 'an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Canales v. Davis*, No. 1:20-CV-77, 2020 WL 1018231, at *5 (E.D. Tex. Feb. 28, 2020) (quoting *Whitley v. Hann*a, 726 F.3d 631, 646 (5th Cir. 2013)) (cleaned up), *report and recommendation adopted*, No. 1:20-CV-77, 2020 WL 977045 (E.D. Tex. Feb. 28, 2020); citing *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 481 (5th Cir. 2014) (quoting *In Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 & n.3 (1st Cir. 1990)) ("it is possible to hold a named defendant liable for his failure to intervene vis-a-vis the excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him."), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015). "In resolving whether a plaintiff has sufficiently alleged a bystander liability claim, the Court should also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Canales*, 2020 WL 1018231, at *5 (quoting *Whitley*, 726 F.3d at 647).

---

[31] To the extent any false arrest or imprisonment claim is alleged against Sheriff Cass, those claims should be dismissed for the same reasons. *See Aubrey*, 2020 WL 1469955, at *13 (quoting *Webster*, 735 F.2d at 842 (emphasis added)) ("These two allegations, standing alone, fall far short of establishing a pattern that 'occurred *for so long or so frequently*' that false arrest and imprisonment is 'the expected, accepted practice of [City of Dallas] employees.'").

Defendants argue Plaintiff has failed to state a claim against Womack, and further that Womack is entitled to qualified immunity because Plaintiff has not pleaded that Womack's "decision not to intervene" was "objectively unreasonable under the circumstances" [Dkt. 45 at 18]. In response to Defendants' Motion, Plaintiff only addresses whether she has pleaded sufficient facts to state an excessive force claim against Amis; Plaintiff points to no factual allegations related to Womack, nor does she contest that Womack is entitled to qualified immunity or properly dismissed for failure to state a claim [Dkt. 52 at 13]. Defendants specifically urge Womack is entitled to qualified immunity on any excessive force claim because Plaintiff "does not plead any facts to explain where the other Officers were when [Deputy Doe touched her breasts], if they in fact witnessed the alleged groping, how long the alleged groping lasted, or any explanation why he may be placing his hands on her body when she was admittedly trying to turn her body back into the bathroom while Officer Amis was trying to pull her out of the bathroom" [Dkt. 45 at 17-18]. Plaintiff has not alleged Womack was present for the alleged groping or any other use of force. *See Whitley*, 726 F.3d at 647 (citations omitted) ("We observe at the outset that Whitley has failed to state a claim against Bullock because she has not alleged that he was in Ariaz's presence when Ariaz was sexually abusing Whitley. As a result, Bullock is not within the scope of a bystander liability claim. Even were we merely to require knowledge, Bullock still would not be liable because he acted reasonably in entrusting Hanna with investigating and arresting Ariaz."). Indeed, Plaintiff's pleads that Womack was "standing in the living room" at the time Amis and Deputy Doe allegedly used excessive force against her during the execution of the search warrant [Dkt. 43 at 8]. No allegation can be found in the live pleading that Womack was present for the execution of any search or arrest warrant either. Plaintiff's broad claim that Womack "failed to intervene with use of for[ce] by Anson [Amis]" [Dkt. 43 at 12], is simply not

sufficient to state a claim for bystander liability.

Stated differently, even construed broadly, Plaintiff's live pleading alleges only that "Womack did nothing to stop" the actions of the other deputies [Dkt. 43 at 13].   No other allegations can be found specific to Womack.  Plaintiff fails to state a claim for failure to intervene in the allegedly unconstitutional actions (excessive force/false arrest) against Womack and dismissal is warranted.  *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (finding the district court erred by not dismissing a bystander liability claim for arrest without probable cause where the plaintiffs "enumerated elements of the claim, but nothing more," as a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *Delacruz*, 2019 WL 1211843 at *5 ("At the pleading stage, the proper procedural framework for addressing a § 1983 claim is first to determine whether the plaintiff has sufficiently pleaded the elements of a constitutional violation; only then does the court proceed to the qualified immunity analysis.").   "Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."  *Goodman*, 571 F.3d at 396.

The Court similarly finds any state law claim for false imprisonment against Womack should be dismissed.  Defendants urge Plaintiff has failed to plead factual content in support of her state law false imprisonment claim, brought in the alternative to her § 1983 claims [Dkt. 45 at 9-12].  For a claim for false imprisonment in Texas, "[t]he essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law."  *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).   Willful detention "may[] be satisfied by conduct that is intended to cause one to be detained, and in fact causes the detention, even when the actor does not participate in the detention."  *Id.* at 507.  For the third element, "[u]nder Texas

law, when a plaintiff is arrested or detained pursuant to a warrant, the arrest or detention is presumed to have been made with valid legal authority." *Campbell v. Home Depot U.S.A., Inc.*, No. 4:12-CV-2613, 2014 WL 12531344, at *3 (S.D. Tex. May 23, 2014) (citing *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 248 (Tex. App—Texarkana 1975, writ ref'd n.r.e.)).

Plaintiff's allegations are nothing more than "bare accusations" and legal conclusions that do not plausibly allege Womack willfully caused Plaintiff to be detained. *See Connolly v. Reed*, No. SA-08-CA-882-FB, 2009 WL 10702848, at *24 (W.D. Tex. Sept. 14, 2009) ("Although there are many specific allegations about the Deputies' acts, no factual allegations support the conclusory allegations that Sheriff Tafolla directed, supervised, or participated in Mr. Connolly's arrest."), *report and recommendation adopted*, No. SA-08-CA-882-FB, 2009 WL 10702846 (W.D. Tex. Dec. 7, 2009). Plaintiff's allegation that Womack was a bystander defeats any claim because false imprisonment is an intentional tort, and liability arises from intentional conduct and not mere negligence. *See Wal-Mart Stores*, 92 S.W.3d at 510-11. Speculative allegations that Womack intended to cause Plaintiff to be detained are not enough to state a claim for which relief can be granted, and this claim should be dismissed as to Womack. *See Lloyd v. Jones*, No. 9:18-CV-211, 2019 WL 4786874, at *9 (E.D. Tex. Sept. 10, 2019) ("Even construed in the most favorable light, the speculative nature of these allegations falls short of the pleading requirements and, accordingly, Plaintiff fails to state a claim for relief based on the false imprisonment of Christy."), *report and recommendation adopted sub nom. Hopson-Lloyd v. Jones*, No. 9:18-CV-211, 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019). In sum, each of Plaintiff's claims against Womack should be dismissed.


***Remaining Claims Against Amis - Qualified Immunity***

Qualified immunity is a defense available to government officials in their individual capacities. *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994). "Qualified immunity protects public officials from liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Laviage v. Fite*, No. 21-20678, 2022 WL 3714737, at *2 (5th Cir. Aug. 29, 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To overcome the officers' qualified immunity defense, [Plaintiff] must allege facts showing that the officers (1) 'violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "Because the officers invoked a qualified immunity defense, the burden shifts to [Plaintiff] to show the officers violated his clearly established rights." *Id.* (citing *Cass v. City of Abilene*, 814 F.3d 721, 729, 732-33 (5th Cir. 2016)). Between the two prongs, a district court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Regarding the first prong, a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (internal quotation marks omitted); *see Zadeh v. Robinson*, 928 F.3d 457, 469 (5th Cir. 2019). Notably, and as the Fifth Circuit has explained, a "defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all." *Johnson v. Johnson*, 385 F.3d 503, 525 (5th Cir. 2004). "This court must thus initially ask whether the challenged conduct

actually presents a violation of federal law [or the Constitution]." *Douglas v. Herrin*, No. SA-11-CV-766-XR, 2012 WL 176223, at *3 (W.D. Tex. Jan. 20, 2012). With respect to the second prong, a defendant is entitled to qualified immunity when his conduct is objectively reasonable in light of clearly established law at the time of the conduct at issue. *Anderson v. Creighton*, 483 U.S. 635, 639.

Considering this principle, and to properly analyze qualified immunity here, the Court fully examines the required elements of a § 1983 claim. "In order to assert a claim for damages for violation of federal constitutional rights under 42 U.S.C. § 1983, a plaintiff must set forth facts in support of the required elements of a § 1983 action: (1) that he has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendants deprived him of such right while acting under color of law." *Newsome v. Robinson*, No. CIV A 4:08-CV-662-Y, 2009 WL 648980, at *1 (N.D. Tex. Mar. 12, 2009). "To establish the use of excessive force in violation of the Constitution, a plaintiff must prove: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Rivera*, 2022 WL 1103077, at *13 (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). Courts "examine each officer's actions independently to determine whether he [or she] is entitled to qualified immunity." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)). "The constitutional claim of false arrest, in violation of the Fourth Amendment, requires a showing that there was no probable cause." *Navarro v. City of San Juan*, 624 F. App'x 174, 179 (5th Cir. 2015). The individual Defendants "are entitled to qualified immunity for the arrest if 'a reasonable person in their position could have believed he had probable cause to arrest'" Plaintiff. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) ("In suits

alleging illegal arrest, the qualified immunity determination turns on whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed.").

### Order for Rule 7 Reply[32]

While Plaintiff's allegations against Amis related to her claim for excessive force and/or false arrest are more fulsome than the conclusions pleaded as to many of the other Defendants, the Parties' briefing is sparse as to Amis's invocation of qualified immunity. The Court is unable to fully analyze the applicability of immunity based on the present filings. "When [a] defendant asserts qualified immunity, the court can order the plaintiff to submit a reply, refuting the immunity claim 'with factual detail and particularity.'" *Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) (quoting *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005)). Federal Rule of Civil Procedure 7(a) authorizes the Court to order a reply, FED. R. CIV. P. 7(a)(7), and in the context of a defendant's assertion of qualified immunity as a defense:

> [A] district court has discretion under Rule 7(a) to require the plaintiff to file a reply specifically tailored to that defense. A Rule 7(a) reply is required when a plaintiff pleads only sparse details of claimed wrongdoing by officials. The court should exercise this narrow discretion when greater detail might assist in vindicating an immunity defense. The heightened pleading standard requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff[']s injury.

---

[32] The Court has attempted to identify the precise constitutional claims alleged by Plaintiff prior to ordering a Rule 7(a) reply. The preceding discussion of the relevant legal and factual issues related to violations of the Fourth Amendment is by no means an exhaustive review of the law or factual allegations, and both sides should address all relevant legal and factual allegations needed to respond to or advance the qualified immunity defense. *See, e.g.*, *Williams v. City of Jackson*, No. 3:20-CV-785-DPJ-FKB, 2021 WL 4485865, at *5 (S.D. Miss. Sept. 29, 2021) ("Before concluding that a *Schultea* reply is necessary, the Court endeavored to identify the more precise federal claims and determine whether the rights were clearly established. Through that process, the Court identified certain factual and legal issues that will need to be addressed. While it is not the Court's responsibility to issue spot for the parties, it seems prudent to mention issues that both sides will ultimately need to address. This is not intended to be an exhaustive list—the parties should address all relevant legal issues—but these are the claims that seem apparent and some questions the Court has regarding them.")

*Hatcher v. City of Grand Prairie*, No. 3:14-CV-432-M, 2014 WL 3893907, at *8-9 (N.D. Tex. Aug. 6, 2014) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995); *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)); *Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under Federal Rule of Civil Procedure 7(a) to qualified immunity defenses.").[33][34]

Conducting the qualified immunity inquiry in this case as to Amis "is a difficult task" where, as here, Plaintiff "highlight[s] the factual averments from the[] Complaint without offering any legal analysis of the[] specific federal claims or any legal authority demonstrating that the alleged acts violated clearly established law," and Amis has replied "in like generalities, addressing the alleged facts but offering little legal analysis of the precise claims—of which there are many." *See Williams v. City of Jackson*, No. 3:20-CV-785-DPJ-FKB, 2021 WL 4485865, at *3 (S.D. Miss. Sept. 29, 2021). "This leaves the Court with neither a clear statement of the specific federal claims nor legal analysis of them from either side. Rather than conduct a *sua sponte* review of all claims and speculate about what the parties might say, the better course is to allow Plaintiff[] another opportunity to explain why qualified immunity does not apply." *Id.*

Thus, after reviewing Plaintiff's live pleading [Dkt. 43], Defendants' Motion to Dismiss [Dkt. 45], Plaintiff's Responses [Dkts. 49; 52], Defendants' Reply [Dkt. 53], Defendants'

---

[33] The Fifth Circuit makes clear that courts may order a Rule 7(a) reply in response to a motion to dismiss that raises the defense of qualified immunity. *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)) (where the defendant first raises qualified immunity, the court "may [then] in its discretion, insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity.'").

[34] Other courts have dismissed municipal liability claims against those defendant entities while deferring ruling on individual capacity claims against a single remaining defendant pending the court's order for a Rule 7(a) reply addressing the issue of qualified immunity. *See, e.g.*, *Arevalo v. City of Farmers Branch*, No. 3:16-CV-1540-D, 2017 WL 5569841, at *13 (N.D. Tex. Nov. 20, 2017) ("For the reasons explained, the court grants the motion to dismiss as to claims alleging municipal liability against Farmers Branch. The court defers ruling on the claims against Chief Fuller in his individual capacity, directs that Arevalo files a Rule 7(a) reply, and permits supplemental briefing on whether Chief Fuller is entitled to qualified immunity.").

Supplements [Dkts. 62; 67], Plaintiff's Response to Defendants' Supplements [Dkt. 77], and Defendants' Reply [Dkt. 79], and all other relevant filing, the Court finds that Plaintiff should file a Rule 7(a) Reply as to Defendant Amis's assertion of qualified immunity.  Plaintiff has failed, at present, to clarify Amis's alleged conduct and to respond with specific, concrete facts that distinguish the conduct of Amis from the other individual Defendants for the Court to adequately analyze Amis's qualified-immunity defense as to the remaining claims.  *See Arevalo v. City of Farmers Branch*, No. 3:16-CV-1540-D, 2017 WL 5569841, at *13 (N.D. Tex. Nov. 20, 2017) (ordering a Rule 7(a) reply to more fully develop the factual allegations for analyzing the invocation of qualified immunity against an excessive force claim) ("The court finds that greater detail would assist its analysis here. As the foregoing sections demonstrate, the particularity of Officer Johnson's excessive force reprimands determine whether Chief Fuller's alleged decisions—both to hire and to not provide Officer Johnson with deadly force training—were objectively reasonable under clearly established law. Should Arevalo provide further details concerning these reprimands, it would further inform the propriety of the court's reasoning."); *Berry v. Tex. Woman's Univ.*, No. 4:19-CV-00409-RWS-CAN, 2020 WL 9936206, at *2 (E.D. Tex. Oct. 1, 2020).

It is therefore **ORDERED** that Plaintiff shall file a reply under Rule 7(a) as to Defendant Amis's assertion of qualified immunity within twenty-one (21) days from the adoption, if any, of this Report.  Plaintiff's Rule 7(a) Reply shall delineate specific, concrete facts and dates that support the allegations made in Plaintiff's live pleading [Dkt. 43] against Defendant Amis in his individual capacity for violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983. "[C]ollective pleading will not suffice."  *See Williams*, 2021 WL 4485865, at *9 ("Plaintiffs will need to explain the claims in terms of which Plaintiffs assert which specific claims, against which

Defendants, on what factual basis, and show why the alleged acts violate clearly established law."). To be clear, Plaintiff's reply must (1) identify the specific federal claims asserted against Amis, (2) clearly provide non-conclusory facts regarding Amis's personal involvement in the alleged violations of Plaintiffs' constitutional rights as to each claim, including specific facts illustrating Amis failed to act reasonably in light of clearly established law with respect to the violations alleged, as well as (3) for each claim, conduct a case-specific legal analysis demonstrating— through legal authority—that the alleged conduct violated Plaintiff's rights and that those rights were clearly established at the time of the alleged violation. *See Reyes*, 168 F.3d at 158; *Schultea*, 47 F.3d at 1427; *Arevalo*, 2017 WL 5569841, at *13 ("Arevalo [shall] file a Rule 7(a) reply that alleges with particularity all material facts that she contends establishes right to recover under § 1983 against Chief Fuller in his individual capacity for the violation of a constitutional or statutory right"). "[U]nless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021). Thus, "[P]laintiff must 'identify[ ] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and ... explain[ ] why the case clearly proscribed the conduct of that individual officer.'" *Id*. (alteration in original) (quoting *Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).

Further, the Court provides notice that failure to file a Rule 7(a) Reply in compliance with this Report will result in a recommendation of dismissal of Plaintiff's § 1983 claim(s) against Amis in his individual capacity. *See Reyes*, 168 F.3d at 161 ("Plaintiffs did not allege their claims against the supervisory defendants with particularity. Their pleading was little more than a bare conclusion, and the district court ... should first have ordered a reply, and if the required detail was not forthcoming, dismiss the complaint."); *Weathered v. Dallas Cnty.*, No. 3:10–CV–0781–B,

2011 WL 1356881, at *5 (N.D. Tex. Apr. 8, 2011) ("If the plaintiff does not provide the required detail to overcome the qualified immunity defense, the court must dismiss the complaint.").[35]

The Court recommends Defendants' Motion to Dismiss be denied without prejudice to refiling as to Amis's defense of qualified immunity, if warranted, after Plaintiff has filed a Rule 7(a) Reply. *See Johnson v. Tex. Dep't of Crim. Just.*, No. 5:11CV171, 2012 WL 1066507, at *5 (E.D. Tex. Mar. 5, 2012) (denying motion to dismiss limited to the remaining § 1983 claims for which the defendant asserts qualified immunity, pending the filing of the plaintiff's Rule 7(a) reply), *report and recommendation adopted*, No. 5:11CV171, 2012 WL 1066504 (E.D. Tex. Mar. 28, 2012).

## NON-MOVING DEFENDANT FRANKLIN

### *Defendant Broderick Franklin[36]*

Defendant Franklin has not appeared in this action, and the Parties disagree over whether he has been served with process. It is Plaintiff's burden to show each Defendant has been properly served. At present it is unclear to the Court whether Franklin has been served. The reissued summons avers that Franklin may be served at: Broderick Franklin, 1179 County Road, 32240 Summer, TX 75489-5663 [Dkt. 55]. Franklin was not served at this address. The return of service

---

[35] The Fifth Circuit has recently clarified that, consistent with Supreme Court precedent, courts may not however permit any additional *discovery* on the issue of qualified immunity. *Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022) ("The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer must survive the motion to dismiss (and the qualified immunity defense) without any discovery."); *see Cobbins v. Graham*, No. CV 21-155-JWD-EWD, 2022 WL 2663852, at *2 (M.D. La. July 11, 2022) (footnote omitted) ("In the context of a qualified immunity defense asserted in a motion to dismiss, this framework is no more. As Carswell explained, "[t]he Supreme Court has now made clear that a plaintiff asserting claims against an officer must survive the motion to dismiss (and the qualified immunity defense) without any discovery.").

[36] Although Defendants' motion is not filed on behalf of Defendant Franklin, they do repeatedly note that it is unknown whether he has been served with the amended complaint [*See* Dkt. 68 at 5]. Plaintiff avers Franklin has been served [Dkts. 43; 55]. However, Plaintiff has twice presented the Court with charts summarizing the status of service as to each Defendant, and Franklin is omitted from both [Dkts. 52 at 5; 77 at 3]. And Plaintiff's motion for additional time to complete service did not include Franklin on the list of specific Defendants for which Plaintiff moved for more time [Dkt. 65 at 1] (specifically moving for additional to for service as to "Defendants Tyler Bussell, Scott Cass, Medical Jailer Shannon, Courtney Womack for a period of 7 days."). Even if Franklin remains unserved, as a non-movant the grounds for dismissal urged by the moving Defendants inure to him for the reasons explained herein.

states Franklin was served at 471 County Road, 34450 Sumner, TX 75486 by "[leaving] the summons at the individual's residence or usual place of abode *(name)*" [*Compare* Dkt. 55, *with* Dkt. 71, Sealed]. Based on the present record, Franklin appears to remain unserved with the live pleading. *See Casas v. City of Fort Worth Police Dep't*, No. 4:15-CV-872-O, 2017 WL 3638321, at *3 n.5 (N.D. Tex. May 17, 2017) (finding that because the court "can raise this issue *sua sponte*, the Court will include Defendant [Franklin] in its analysis of whether the individual defendants should be dismissed because of the failure to effectuate service of process in a timely manner."), *report and recommendation adopted*, No. 4:15-CV-872-O, 2017 WL 3620572 (N.D. Tex. Aug. 23, 2017).

Whether properly served or not, Plaintiff's claims against Franklin should be dismissed. The Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (holding that where "a defending party establishes that plaintiff has no cause of action ... this defense generally inures also to the benefit of a defaulting defendant."). "The policy rationale for this rule is that it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Baggiolini v. Ocwen Fin. Corp.*, No. 4:19-CV-00156-ALM-CAN, 2019 WL 8331423, at *8 (E.D. Tex. Dec. 12, 2019), *report and recommendation adopted*, No. 4:19-CV-156, 2020 WL 813044 (E.D. Tex. Feb. 19, 2020). Thus, even were Plaintiff to have effectively served Franklin, the same limitations defenses, failure to state a claim, and qualified immunity defense as asserted by the moving Defendants would inure to him. *See McCarty v. Zapata Cnty.*, 243 F. App'x 792, 794-95 (5th Cir. 2007); *Crop Prod. Servs., Inc. v. Keeley*, No. 4:14-CV-559, 2016 WL 2758439, at *5 (E.D. Tex. May 12, 2016), *aff'd sub nom.*

*Matter of Grabanski*, 691 F. App'x 159 (5th Cir. 2017); *Newton v. Joseph*, No. 1:13-CV-510, 2015 WL 1321491, at *4 (E.D. Tex. Mar. 23, 2015); *Salter v. United States*, 2010 WL 796588 (E.D. Tex. Mar. 8, 2010).  Upon consideration of such grounds, Plaintiff's claims against Franklin should be dismissed; Plaintiff has failed to state any claim whatsoever against Franklin.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends Defendants Lamar County, Texas, Sheriff Scott Cass, Anson Amis, Tyler Bussell, Patty Easterwood, Courtney Womack, and Medical Jailer Shannon's Motion to Dismiss Plaintiff's Second Amended Complaint be **GRANTED IN PART** [Dkt. 45].  The Court specifically recommends each of Plaintiff's claims against Lamar County, Sheriff Cass, and Womack be **DISMISSED WITH PREJUDICE**; Plaintiff's claims for violation of the ADA and for medical indifference against Amis be **DISMISSED WITH PREJUDICE**; and Plaintiff's claims against Bussell, Easterwood, Medical Jailer Shannon, and Franklin be **DISMISSED WITHOUT PREJUDICE**.  The Court further recommends Defendants' Motion to Dismiss in response to Plaintiff's remaining § 1983 claims asserted against Defendant Amis only be **DENIED WITHOUT PREJUDICE TO REFILING**, and that Plaintiff be **ORDERED** to file a reply, under Rule 7(a), as to Defendant Amis's assertion of qualified immunity within twenty-one (21) days from the adoption, if any, of this Report, as set forth *supra*.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 9th day of September, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE